**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

DANNETTA G. SPELLMAN,

       Plaintiff,

v.                                                                              Case No.  2:17cv635

THE SCHOOL BOARD OF THE CITY
OF CHESAPEAKE, VIRGINIA,

       Defendant.

## REPORT AND RECOMMENDATION

On December 11, 2017, Plaintiff Dannetta G. Spellman ("Plaintiff") instituted this cause of action by filing a two count Complaint, asserting that her former employer, the City of Chesapeake, Virginia Public Schools and the School Board of the City of Chesapeake, Virginia had discriminated against her in her former employ as a public school teacher.   ECF No. 1. On January 30, 2018, pursuant to a joint stipulation between the parties, the claims against Defendant City of Chesapeake, Virginia Public Schools were dismissed with prejudice, leaving the School Board of the City of Chesapeake, Virginia as the sole Defendant in this action.  *See* ECF No. 9 ("Joint Stipulation").

## I.  INTRODUCTION

Before the Court is Defendant School Board of the City of Chesapeake, Virginia's ("Defendant") Motion to Dismiss Count I of the Complaint and accompanying Memorandum in Support, filed on February 27, 2018.  ECF Nos. 11-12.  The Motion asserts that the Court lacks subject matter jurisdiction to consider Count I under Fed. R. Civ. P. 12(b)(1), and, in the alternative, that Count I fails to state a claim upon which relief can be granted under Rule

12(b)(6).  Although Plaintiff originally failed to timely respond, the Court permitted Plaintiff to file her Opposition (ECF No. 13) and directed the Clerk to treat the same as timely filed.  *See* ECF Nos. 14, 18.  Defendant timely replied on March 20, 2018.  ECF No. 16.  This matter was referred to the undersigned United States Magistrate Judge ("the undersigned") for a report and recommendation pursuant to a Referral Order from the Chief United States District Judge. ECF No. 17.  *See also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. Notwithstanding Plaintiff's request for a hearing, ECF No. 15, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J).  For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Count I, ECF No. 11, be **GRANTED.**

## II. STANDARDS OF REVIEW

Defendant has moved to dismiss the claims made in Count I pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 12, *passim.*

A.  Rule 12(b)(1)

A defendant may contest a court's subject matter jurisdiction in two ways under Fed. R. Civ. P. 12(b)(1).  "First, a defendant may attack the complaint on its face, when the complaint 'fails to allege facts upon which subject matter jurisdiction can be based.'" *Wynne v. I.C. Sys., Inc.*, 124 F. Supp. 3d 734, 738-39 (E.D. Va. 2015) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)).  In that event, the well-pleaded facts asserted in the complaint are assumed to be true and are construed in the light most favorable to the plaintiff.  *Wynne*, 124 F. Supp. at 739; *Adams*, 697 F.2d at 1219.  When considering a motion to dismiss under this prong of Rule 12(b)(1), the Court may consider evidence central to the pleadings or attached thereto without converting the motion into one for summary judgment.  *See, e.g., Jeffrey J. Nelson & Assocs.,*

*Inc. v. LePore*, No. 4:11cv75, 2012 WL 2673242, at *4 (E.D. Va. July 5, 2012) ("A court 'may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed,' without converting the motion into a motion for summary judgment.") (citation omitted).

Alternatively, a defendant may challenge the existence of subject matter jurisdiction in fact, apart from anything alleged in the pleadings, and may proffer evidence outside the pleadings without converting the motion into one for summary judgment. *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996); *Adams*, 697 F.2d at 1219; *see also Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) ("In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."). Regardless of whether the defendant challenges subject matter jurisdiction based on an attack on the complaint on its face, or an attack on the existence of subject matter jurisdiction apart from the pleadings, "the burden is on plaintiffs, as the party asserting jurisdiction, to prove that federal jurisdiction is proper." *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams* 697 F.2d at 1219). Moreover, plaintiffs must prove that subject matter jurisdiction exists by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009).

B. Rule 12(b)(6)

A motion filed under Federal Rule of Civil Procedure 12(b)(6) challenges the legal

3

sufficiency of a complaint. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006).  In considering this motion, the Court must assume that the facts alleged are true, and view them in the light most favorable to the plaintiff. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).  Federal Rule of Civil Procedure 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To be sufficient under Rule 8, the pleading must meet two basic requirements:  it must contain sufficient factual allegations and those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)).  *See also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.,* 780 F.3d 582, 585 (4th Cir. 2015) ("The Supreme Court has accordingly held that Rule 8(a)(2) requires that 'a complaint . . . contain[ ] sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face' in the sense that the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570); citing *Coleman,* 626 F.3d at 191 (finding a complaint inadequate because its allegations "fail[ed] to establish a plausible basis for believing . . . that race was the true basis for [the adverse employment action]")) (italics in original).

First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do;" rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  Second, to "nudge[] their claims across the line from conceivable to plausible," *id.*

4

at 570, "plaintiff[s] [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.  Indeed, to achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557.  Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Consequently, when considering a motion to dismiss, only those allegations which are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that legal conclusions must be supported by factual allegations).  "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

As it must, the Court assumes the following facts alleged in the Complaint are true.  On or about February 28, 2017, Plaintiff's employment as a public school teacher in the City of Chesapeake, Virginia was officially terminated by Defendant.  Plaintiff was initially hired in February 1984 and she served as an educator for thirty-two years as both a classroom teacher and as a continuing contract teacher until her termination, primarily at Hickory Elementary School, located in Chesapeake, Virginia.  ECF No. 1 at 8, ¶¶ 18-19.  *See also* ECF No. 1, attach. 1 at 1. In the 2013-2014 school year, Kimberly Pinello ("Pinello"), a white female, became principal of Hickory Elementary School and Plaintiff's supervisor.  ECF No. 1 at 8, ¶ 20.  Prior to Pinello's administration, Plaintiff had received satisfactory annual performance evaluations and was never subjected to disciplinary actions.  Sometime after Pinello's arrival, Pinello placed Plaintiff on a

5

performance improvement plan ("PIP").   On or about May 31, 2016, Pinello recommended Plaintiff's dismissal to Defendant on the grounds that Plaintiff was incapable of competent job performance.   At the time of Plaintiff's proposed termination, Plaintiff was 58 years old and one of only two black educators at Hickory Elementary School, out of a total of approximately thirty educators. ECF No. 1 at 9-10, ¶ 25; ECF No. 1, attach. 1 at 2.   Ultimately, Defendant accepted Pinello's recommendation, and upheld the termination of Plaintiff's employment on February 28, 2017. ECF No. 1 at 10, ¶ 27.

On March 16, 2017, Plaintiff filed a Charge of Discrimination with the Virginia EEOC. ECF No. 1, attach. 1 (Charge of Discrimination).   In this Charge, Plaintiff alleged that she had been subject to race and age discrimination in her termination and also in the time leading up to her termination in violation of Title VII of the Civil Rights Act of 1964. *See* ECF No. 1, attach. 1 at 1 (checking "race" and "age" boxes when asked to indicate the basis of the alleged discrimination). The EEOC issued a Notice of Right to Sue on September 13, 2017, which Plaintiff received by mail on September 15, 2017.  ECF No. 1 at 7, ¶ 16; ECF No. 1, attach. 2 (Notice of Right to Sue).

On December 11, 2017, Plaintiff filed a two count Complaint in this Court. ECF No. 1. The undersigned notes that the Complaint, and especially Count I is not a model of clarity.  As the Court interprets Count I, Plaintiff asserts mixed claims of race and gender discrimination pursuant to multiple statutes.  In the interest of clarity, the undersigned finds that Count I asserts the following four claims: (1) race discrimination pursuant to Title VII; (2) gender discrimination pursuant to Title VII; (3) race discrimination under 42 U.S.C. § 1981 ("§ 1981"); and (4) gender discrimination under § 1981. *See* ECF No. 1 at 10-11, ¶¶ 28-33.  Count II asserts a claim for age

discrimination that is not subject to the instant Motion to Dismiss.[1]

On February 27, 2018, Defendant filed a Motion to Dismiss Count I of the Complaint and a Memorandum of Law in Support. ECF Nos. 11-12. Therein, Defendant argued that Count I should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for several reasons. First, Defendant contends that this Court lacks subject matter jurisdiction over Plaintiff's purported Title VII gender claim because she failed to exhaust her administrative remedies prior to filing suit. Second, Defendant contends that Plaintiff failed to properly assert a claim under 42 U.S.C. § 1983 ("§ 1983") to vindicate rights protected by § 1981 allegedly violated by a state actor. Third, Defendant argues that no cognizable gender claim exists under § 1981 and/or § 1983. Finally, Defendant contends Plaintiff failed to allege facts to state a claim for racial discrimination under either Title VII or § 1981 and/or § 1983. ECF No. 12, *passim*.

In Plaintiff's Opposition, Plaintiff contends that because her gender claim "is reasonably related to the overall tenor of the claims filed with the EEOC, this Court has jurisdiction over such claims." ECF No. 13 at 5. With respect to Defendant's second point, Plaintiff does not concede this argument, but "respectfully requests leave to file an amended complaint to include a 42 U.S.C. Section 1983 claim." ECF No. 13 at 6. Plaintiff's Opposition does not appear to address Defendant's third point regarding the lack of an available gender claim under § 1981 and/or § 1983. *See* ECF No. 13, *passim*. With respect to the final point, Plaintiff devotes half a page to stating and restating the standard of review, (requiring the Court to view the allegations in a light most favorable to non-moving party) and articulating the conclusion that "[t]he facts that Spellman are sufficient [sic] to overcome a motion for dismissal," without actually identifying which facts specifically establish a prima facie race discrimination claim. *See* ECF

---

[1] Notably, Count II is not entirely free of error. The very first paragraph of Count II states "Plaintiff *Rountree* re-alleges and incorporates Paragraphs One (1) through Twenty Seven [sic] of her Complaint as though they were repeated herein, verbatim." ECF No. 1 at 12, ¶ 34 (emphasis added).

No. 13 at 7. Ultimately, Plaintiff contends that if Defendant's Motion to Dismiss is granted the dismissal should be without prejudice, to allow Plaintiff the opportunity to file an Amended Complaint and thereby "eliminate any basis for defendant's motion to dismiss Count I". ECF No. 13 at 8.

Defendant's Reply essentially reiterates the arguments made in its original Memorandum of Law in Support of its Motion to Dismiss, with the additional argument that Plaintiff should not be granted leave to amend her Complaint. *See* ECF No. 16, *passim*. Defendant argues that Plaintiff offered no suggestion as to how such amendment would remedy the pleading deficiencies as to the merits of her race claims, nor did she suggest how any amendment would cure the deficiencies regarding subject matter jurisdiction over the gender discrimination claim. *See* ECF No. 16 at 6.

## IV. DISCUSSION

### A. Title VII Race and Gender Claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2(a). Specifically, an employer may not discriminate against an individual with respect to her "compensation, terms, conditions, or privileges of employment." *Westry v. N. Carolina AT & T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), *aff'd*, 94 F. App'x 184 (4th Cir. 2004) (quoting 42 U.S.C. § 2000e–2(a)). In the Fourth Circuit, it is well-established that "[b]efore a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Id.*

8

Thus, under the current statutory framework, "Title VII gives initial enforcement responsibility to the EEOC.  An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).  A charge is acceptable only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Chacko*, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b) (2004)).  After the charge has been filed, the EEOC investigates the alleged unlawful acts and provides notice of the charges to the employer within ten days. *Chacko*, 429 F.3d at 508-09 (citing 42 U.S.C. § 2000e-5(b)).  If the EEOC finds reasonable cause to believe the allegations are true, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.*  Irrespective of the outcome of the EEOC investigation, "[a]n individual cannot bring suit until he has exhausted the administrative process." *Chacko*, 429 F.3d at 509 (citing 42 U.S.C. § 2000e-5(b), (f)(1); *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002); 29 C.F.R. § 1601.28).

Although "[a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow . . .  the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (quoting *Chisholm v. United States Postal Serv.,* 665 F.2d 482, 491 (4th Cir. 1981)).  Thus, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509–10 (4th Cir. 2005) (citing *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247-48 (4th Cir. 2000) (plaintiff exhausted administrative remedies when both formal

9

complaint and administrative charge alleged she was retaliated against by management because she complained about supervisor's sexual harassment); *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981); *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) ("The crucial element of a charge of discrimination is the factual statement contained therein.") (internal quotation marks omitted); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ( "[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.") (internal quotation marks omitted)) (alteration in original).

In Count I, Plaintiff contends that she suffered racial and gender discrimination in violation of Title VII. ECF No. 1 at 10-11, ¶¶ 28-33. In the interest of clarity, the undersigned will address Plaintiff's discrete Title VII claims separately.

*1. Title VII Race Discrimination*

A plaintiff may properly assert a race discrimination claim pursuant to Title VII, so long as he or she has properly exhausted his or her administrative remedies. The undersigned finds, and Defendant does not contest, that Plaintiff's March 16, 2017 Charge of Discrimination sufficiently alleged discrimination based on race, and therefore, the Court has subject matter jurisdiction to consider the claim. *See* ECF No. 1, attach. 1. Consequently, the undersigned will consider Defendant's Motion to Dismiss this claim as being made pursuant to Rule 12(b)(6).

When asserting a claim for racial discrimination under Title VII, "a plaintiff may establish a claim of race discrimination by demonstrating through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc)).

10

Alternatively, if a plaintiff is unable to point to direct or indirect evidence of racial animus, then he or she may proceed by the *McDonnell Douglas* framework to establish a prima facie case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Here, it appears that the adverse employment action suffered by Plaintiff was the termination of her employment. To succeed on a claim of wrongful termination due to intentional discrimination under Title VII, in the absence of direct evidence, a plaintiff must carry his or her burden under the framework established in *McDonnell Douglas. See Texas Dep't of Comm. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981). "This framework requires, initially, that a plaintiff prove by a preponderance of the evidence a prima facie case for intentional discrimination." *Emami v. Bolden*, 241 F. Supp. 3d 673, 679 (E.D. Va. 2017) (citing *Burdine*, 450 U.S. at 252-53). In cases within the Fourth Circuit, "[f]or wrongful termination, the prima facie case requires such proof of the following: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Emami v. Bolden*, 241 F. Supp. 3d 673, 679–80 (E.D. Va. 2017) (quoting *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004))).

With respect to the third element, "[t]o be cognizable under Title VII's prohibition on workplace discrimination, the employer must engage in an 'adverse employment action.'" *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016), *motion to certify appeal denied,* No. 3:15CV569, 2016 WL 3922053 (E.D. Va. July 20, 2016) (citing *Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 625 (4th Cir. 2015)). To be sure, "Title VII protects against adverse employment actions, [but] not all workplace injustices." *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 819 (E.D. Va. 2016), *motion to certify appeal*

*denied,* No. 3:15CV569, 2016 WL 3922053 (E.D. Va. July 20, 2016). *See also Jeffers v. Thompson,* 264 F. Supp. 2d 314, 329 (D. Md. 2003) ("Although something less than an 'ultimate employment decision' may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy.") (citing *Settle v. Baltimore County,* 34 F.Supp.2d 969, 989 (D. Md. 1999), *aff'd mem.,* 203 F.3d 822 (4th Cir. 2000)). As the Supreme Court observed in *Burlington,* the words included in 42 U.S.C. § 2000e-2(a)(1), "Title VII's core antidiscrimination provision," (including "hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee") "explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 62 (2006). Thus, "[a] n adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004)). With this framework in mind, the undersigned considers the allegations in Count I of the Complaint.

Here, Plaintiff alleges no direct evidence of racial discrimination against her. *See* ECF No. 1, *passim.* Throughout the allegations in her Charge of Discrimination and in her Complaint, she has presented no evidence of derogatory statements, writings, or actions by her supervisors or colleagues which were explicitly based on her race. Rather, her evidence of racial animus appears to be limited to two things: (1) the fact that at the time of her termination, she was one of only two black teachers out of a total of thirty educators at Hickory Elementary School, ECF No. 1 at 9-10, ¶ 25, and (2) evidence of a white male co-worker named who was allegedly permitted and encouraged to seek transfer to another school "rather than terminate his

employment as an older professional educator.  This constituted discrimination as defendants favored Caucasian males over her as an African American female," *id.* at 11, ¶ 30.    Thus, because Plaintiff alleges no direct evidence of discrimination, she must rely on the *McDonnell Douglas* burden-shifting framework to prove disparate treatment by indirect evidence.  However, as evidenced by the previously incorporated references to her Complaint, her indirect evidence of discrimination is equally non-existent.

To be sure, Plaintiff is a member of a protected class and her termination amounts to adverse employment action, thus satisfying the first and third elements of a prima facie Title VII racial discrimination claim, respectively.  *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) ("Cook, who is black, is a member of the protected class . . ."); *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) ("Typical examples of adverse employment actions include '*discharge*, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'") (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)) (emphasis added).[2]  With respect to the second element, Plaintiff alleges that her performance was satisfactory because prior to her placement on what Plaintiff characterizes as a "bogus" and "unwarranted," PIP, ECF No. 1 at 8, ¶ 21, she had never been subjected to disciplinary or remedial measures.  In this procedural posture, and the standards governing a court's consideration of a motion to dismiss for failure to state a claim, the undersigned finds that Plaintiff has sufficiently alleged facts that she satisfactorily performed her

---

[2] Additionally, because her placement on the PIP and apparent failure to comport with the PIP requirements were ultimately used as a justification for her termination, Plaintiff's placement on a PIP could also be considered an adverse employment action, in addition to her actual termination. *See Wooten v. Gruenberg*, No. 1:15-CV-724, 2016 WL 1364043, at *5 (E.D. Va. Apr. 4, 2016), *aff'd*, 678 F. App'x 168 (4th Cir. 2017) ("Similarly, 'where an employee's failure to meet the performance objectives of probation establishes grounds for dismissal, placing an employee on probation may also be an adverse employment action.'") (quoting *Spriggs v. Senior Servs. of Se. Virginia*, 2012 WL 1940761, at *7 (E.D. Va. May 29, 2012) *aff'd sub nom. Spriggs v. Sr. Serv. of Se. Va.*, 489 F. App'x 711 (4th Cir. 2012)). However, like the termination claim, Plaintiff fails to allege facts regarding disparate treatment in placement on PIP as compared to white coworkers.

job at the time of her termination. *See* ECF No. 1 at 8, ¶ 20 ("Throughout her employment with defendants, [Plaintiff] received annual performance evaluations by defendants that were satisfactory and no disciplinary action of any type was ever taken against her by defendants until [Pinello], a Caucasian female, became her principal and supervisor at Hickory Elementary School in the 2013-2014 School Year."). However, this claim still fails because of a failure to plead sufficient facts to support the fourth element (different treatment from similarly situated employees outside the protected class).

Regarding this final element, Plaintiff fails to allege facts sufficient to identify even one suitable comparator. To be sure, "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 545 (4th Cir. 2003)). If, however, a plaintiff does "rely upon comparators . . . the given comparators must be 'similar in all relevant respects.'" *Emami v. Bolden*, 241 F. Supp. 3d 673, 680 (E.D. Va. 2017) (quoting *Haywood*, 387 F. App'x at 359 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994) (citing *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989)))). In *Haywood*, the Fourth Circuit held that "a showing of similarity to comparators 'would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Emami*, 241 F. Supp. 3d at 680 (quoting *Haywood*, 387 F. App'x at 359 (quoting *Mitchell*, 964 F.2d at 583)) (alteration in original). "Comparators need not be identical; rather, they must be similar in all <u>relevant</u> aspects, 'such as conduct, performance, and qualifications.'" *Emami*, 241

F. Supp. 3d at 680 (quoting *Rayyan v. Virginia Dep't of Transportation*, No. 1:15cv01681, 2017 WL 123442, at *3 (E.D. Va. Jan. 12, 2017) (citing *Haywood*, 387 F. App'x at 359)) (emphasis in original).

The only potential comparator conceivably identified in the Complaint is Glenn Holk ("Holk"), a white, male coworker that Defendant allegedly permitted to transfer to another school "rather than to terminate his employment as an older professional educator." ECF No. 1 at 11, ¶ 30. Although Plaintiff repeatedly states that Pinello treated Plaintiff differently than similarly situated white coworkers, the Complaint fails to establish a plausible basis for believing that Holk and Plaintiff were actually similarly situated or that race was the true basis for Plaintiff's termination. *See Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) ("An inference of race or gender discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances.") (citing *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). *See also Sillah v. Burwell*, 244 F. Supp. 3d 499, 513 (D. Md. 2017) ("Put differently, bare allegations that white colleagues were treated more favorably amounts to little more than speculation that the adverse treatment of Plaintiff was race-based.") (citing *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012)); *Lewis v. City of Virginia Beach*, No. 2:15CV321, 2016 WL 4766515, at *6 (E.D. Va. Sept. 12, 2016) ("As the Fourth Circuit explains, 'conclusory statements, without specific evidentiary support' are insufficient to establish that alleged acts of mistreatment were based on a litigant's race.") (quoting *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)). Notably, the Complaint makes no mention of whether Holk was similarly placed on a PIP or otherwise received preferential treatment as

15

compared to Plaintiff, and fails to provide any further detail beyond the fact that he is white and Plaintiff is black and that Holk was transferred to a different school. Indeed, when discussing Holk, Plaintiff alleges that "defendants allowed and encouraged [Plaintiff's] male co-worker . . . to seek a transfer to another school rather than to terminate his employment as an older professional educator" and that "[t]his constituted *gender* discrimination" as opposed to identifying such as *both* gender and racial discrimination. *See* ECF No. 1 at 11, ¶ 30 (emphasis added). This dearth of factual support is fatal to Plaintiff's claim of racial discrimination pursuant to Title VII. *See Booth*, 186 F. Supp. 3d at 486 ("Because two coworkers treated differently for the same offense might not be similarly situated if they have different job responsibilities or circumstances, a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination.") (citing *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) (affirming dismissal of a Title VII discrimination claim where the complaint named a comparator but did not allege facts establishing that the comparator was similarly situated)).

In sum, "although [Plaintiff's] complaint conclusorily alleges that [Plaintiff] was terminated based on h[er] race, it does not assert facts establishing the plausibility of that allegation." *Coleman*, 626 F.3d at 190–91. While "[Federal Rule of Civil Procedure] 8 'marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss

16

Count I be **GRANTED** on this basis and that Plaintiff's Title VII race claim be **DISMISSED WITHOUT PREJUDICE**.[3]

### 2. *Title VII Gender Discrimination*

As previously noted, "Title VII prohibits discrimination based on 'race, color, religion, *sex*, or national origin.'" *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 814 (E.D. Va. 2016), *motion to certify appeal denied*, No. 3:15CV569, 2016 WL 3922053 (E.D. Va. July 20, 2016) (quoting 42 U.S.C. §§ 2000e–(2) (a)(1)) (emphasis added). Therefore, unlike under §§ 1981 and 1983, *see* Part IV.B.2, *infra*, a Title VII gender claim is available. However, as Defendant observed, any claim for gender discrimination pursuant to Title VII requires exhaustion of administrative remedies prior to formally filing suit. *See* ECF No. 12 at 5-6; ECF No. 16 at 1-4. Defendant therefore moves for dismissal of Count I pursuant to Federal Rule of Civil Procedure12(b)(1) on the grounds that, even if Plaintiff properly brought her gender discrimination claim under Title VII, she failed to exhaust her administrative remedies, and thus the Court lacks subject matter jurisdiction to hear this claim. For the reasons stated herein, the undersigned agrees. *See Windsor v. Bd. of Educ. of Prince George's Cty.*, No. CV TDC-14-2287, 2016 WL 4939294, at *4 (D. Md. Sept. 13, 2016) ("Under the precedent of the United States Court of Appeals for the Fourth Circuit, a failure to exhaust administrative remedies under Title VII should be addressed by way of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).") (citing *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009)).

In asserting this argument, Defendant relies on the first prong of Rule 12(b)(1) to mount a facial challenge to the existence of subject matter jurisdiction, under which Plaintiff is afforded the same procedural protections as she would receive under a Rule 12(b)(6) consideration, such

---

[3] *See* Part IV.C., *infra*.

that the facts alleged in the Complaint are taken as true, and the Motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (internal citations and quotations omitted). Additionally, the undersigned is entitled to consider documents integral to the Complaint, including the Charge of Discrimination Plaintiff filed with the EEOC on March 16, 2017, attached as an exhibit to the Complaint. *See* ECF No. 12 at 3 (citing ECF No. 1, attach. 1). *See also* Part II.A, *supra* (citing *Jeffrey J. Nelson & Assocs., Inc. v. LePore*, No. 4:11cv75, 2012 WL 2673242, at *4 (E.D. Va. July 5, 2012) ("A court 'may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed,' without converting the motion into a motion for summary judgment.") (citation omitted)).

In her March 16, 2017 Charge of Discrimination, when instructed to "check [the] appropriate boxe(s)" to indicate the basis of the alleged discrimination, Plaintiff neglected to check "sex," and instead selected only "race" and "age." ECF No. 1 attach. 1 at 1. However, as a court in this division has observed, the failure to check an appropriate box, standing alone, is not dispositive of whether a plaintiff's EEOC charge can support the claims asserted in the complaint. *See Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 571 (E.D. Va. 2009) (observing that "the failure to check the 'retaliation' box is not alone determinative of whether Plaintiff's EEOC charge can support the retaliation claim he asserts in his Complaint") (citing *Williams v. Mancom, Inc.*, 323 F.Supp.2d 693, 695 n.2 (E.D. Va. 2004)). Thus, the undersigned must also consider the language in the body of the EEOC Charge as well. The undersigned finds that the narrative account of the facts supporting Plaintiff's Charge of Discrimination does not allege or describe gender discrimination. Rather, the narrative alleges,

in pertinent part, that

> I believe that I was treated differently than my Caucasian co-workers *on the basis of race* when the respondent School Board accepted the recommendation of my principal for the termination of my employment by denying my continuing contract. I believe that I was treated differently than my Caucasian co-employees and the other African American employee *on the basis of my age* by the recommendation of my dismissal and the placement of a much younger person under the age of 40 years in my place and stead, namely, Arlene Lee. I believe that I was suspended without being provided pay during the pendency of my grievance and the decision of the School Board to confirm my *termination in a racially bias manner compared to other employees and because of my age*. I believe that I am being subjected to different terms and conditions of my employment with the Chesapeake Public Schools and the Chesapeake School Board *because my employer wanted to dismiss older employees and wanted a younger workforce*. These actions were and are in violation of Title VII of the Civil Rights Act of 1964, as amended, and were and are in violation of the Virginia Human Rights Act, Virginia Code Section 2.2-300, et. seq., [sic] as amended.

ECF No. 1, attach. 1 at 2 (emphasis added). Indeed the first time that Plaintiff's gender is mentioned is in Count I of her Complaint, wherein Plaintiff alleges that "defendants allowed and encouraged [Plaintiff's] male co-worker . . . to seek a transfer to another school rather than to terminate his employment as an older professional educator. This constituted gender discrimination as defendants favored Caucasian males over her as an African American female." ECF No. 1 at 11, ¶ 30.

Fourth Circuit case law "make[s] clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge. For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis-such as race-and he introduces another basis in formal litigation-such as sex." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citing *Bryant*, 288 F.3d at 132-33; *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (Title VII retaliation claim barred when

19

administrative charges alleged only age discrimination)).  Here, Plaintiff's Complaint mirrors the example provided by the *Chacko* Court.  Plaintiff's Charge of Discrimination *exclusively* alleged discrimination on the basis of race and age, yet her Complaint seeks to introduce alleged discrimination on the basis of gender.  *Compare* ECF No. 1, attach. 1, *with* ECF No. 1 at 11, ¶ 30.  This she cannot do because "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) (citing *King v. Seaboard Coast Line R.R.,* 538 F.2d 581, 583 (4th Cir. 1976)).  As the *Evans* Court noted, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963 (citing *King,* 538 F.2d at 583; *Lawson v. Burlington Indus.,* 683 F.2d 862, 863–64 (4th Cir. 1982) (affirming lower court's determination of untimeliness because charge of illegal layoff does not encompass allegations of illegal failure to rehire), *cert. denied,* 459 U.S. 944 (1982); *Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir. 1993) (finding job transfer and salary claims not contained in EEOC charge barred)).

Having determined that Plaintiff failed to explicitly state a Title VII gender claim in her EEOC charge, and that she is therefore precluded from proceeding with a Title VII gender claim under the first option identified by the *Evans* Court (a claim "stated in the initial charge"), the question remains whether Plaintiff can proceed with her gender claim under the two alternative options identified in *Evans* by showing that her claim of gender discrimination was either a kind of discrimination like or related to allegations contained in the Charge of Discrimination or growing out of such allegations during the pendency of the case before the Commission.

*Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 573 (E.D. Va. 2009) (citing *Evans*, 80 F.3d at 963; *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 302 (4th Cir. 2009)) (internal citations omitted). The undersigned finds that neither of the latter options operate to salvage Plaintiff's unexhausted Title VII gender claim because nothing about the clearly articulated race and age bases of discrimination alleged in the Charge of Discrimination would conceivably lead the EEOC to investigate a gender discrimination claim, nor is there any apparent connection between the discrete basis of gender discrimination and race/age bases of discrimination. *See, e.g., Nicol v. Imagematrix, Inc.*, 767 F. Supp. 744, 752-53 (1991) (barring portions of complaint in which the plaintiff alleged that the defendant had sexually harassed the plaintiff where the plaintiff had only complained of gender and pregnancy discrimination in her EEOC charge, based on the court's reasoning that the EEOC charge claiming sex discrimination and pregnancy discrimination would not lead the EEOC to investigate whether the plaintiff was sexually harassed). Therefore, "'[w]here, as here, the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred' for failure to exhaust the available administrative remedies through the EEOC." *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 570 (E.D. Va. 2009) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Count I as to Plaintiff's Title VII gender claim be **GRANTED** and that Plaintiff's Title VII gender claim be **DISMISSED WITH PREJUDICE**.[4]

### B. Section 1981 Race and Gender Claims

It is "well established that [section] 1 of the Civil Rights Act of 1866, 14 Stat. 27, 42 U.S.C. s 1981, prohibits racial discrimination in the making and enforcement of private

---

[4] *See* Part IV.C., *infra.*

contracts." *Runyon v. McCrary*, 427 U.S. 160, 168–69 (1976) (citing *Johnson v. Railway Express Agency*, 421 U.S. 454, 459-60 (1975); *Tillman v. Wheaton-Haven Recreation Assn.*, 410 U.S. 431, 439-40 (1973); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441-43 n.78 (1968)). Here, Plaintiff has initiated a cause of action against a state actor, namely, the School Board of the City of Chesapeake, Virginia, thus her action is not one seeking enforcement of a private contract.[5] In *Jett v. Dallas Independent School District*, the Supreme Court held "that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. 701, 735 (1989). Thus, *Jett* provided that a plaintiff must meet the requirements of § 1983 to prevail on a claim against a school board. *Id.* at 735-36 (requiring the plaintiff to show that "a[n] [official school district] custom or policy" violated his "right to make contracts"). Subsequently, Congress amended § 1981 through the Civil Rights Act of 1991 to include in subsection (c) that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Since § 1981's amendment, seven circuits have considered whether § 1981 contains both a protected right and an implied cause of action. In *Dennis v. County of Fairfax*, the Fourth Circuit held that Congress did not create a cause of action against state actors under § 1981. 55 F.3d 151, 156 (4th Cir. 1995) (holding that "[t]o the extent that [the plaintiff's claims of racial discrimination] were pleaded under § 1981, they run afoul of *Jett*. . . .[T]he § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in §

---

[5] Notably, Plaintiff concedes as much in the portion of her Complaint describing the parties. *See* ECF No. 1 at 5-6, ¶ 12 ("Defendant City of Chesapeake School Board ('School Board') is a legal entity that functions under the auspices of the authority granted to it by the City of Chesapeake and the Commonwealth of Virginia. The School Board operates and controls the Chesapeake Public Schools, individually and in their official capacities as employees of the School Board.").

1981 actions against state entities"). *See also Windsor v. Bd. of Educ. of Prince George's Cty.*, No. CV TDC-14-2287, 2016 WL 4939294, at *12 (D. Md. Sept. 13, 2016) (observing that in *Dennis*, the Fourth Circuit "held that § 1981(c) does not alter the holding of *Jett*, such that 'the § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities.'") (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1989) (citation omitted)).

Along with the Fourth Circuit, the majority of circuits to consider this issue have held that § 1981 does not contain an implied cause of action against a state actor. While the Third, Fifth, Sixth, Tenth, and Eleventh Circuits have held in agreement with the Fourth Circuit, only the Ninth Circuit has held that § 1981 can provide a cause of action against a state actor independent of § 1983. *Compare Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996), *with McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012), *and McGovern v. City of Philadelphia*, 554 F.3d 114, 118 (3rd Cir. 2009), *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006), *Oden v. Okibbeha Cnty.*, 246 F.3d 459, 463-64 (5th Cir. 2001), *Butts v. Volusia Cnty.*, 222 F.3d 891, 894 (11th Cir. 2000).

Admittedly, case law within the Fourth Circuit on this issue "is somewhat murkier than that of other circuits;" *James v. Univ. of Md.*, No. PJM 12-2830, 2013 WL 3863943, *2 n.1 (D. Md. July 23, 2013), however, *Dennis* remains binding precedent on this Court, and as recognized by other district courts within this Circuit, still controls, *see id.* at *1-2; *Victor v. Kronmiller*, 553 F. Supp. 2d 533, 542-43 (D. Md. 2008). *Dennis* confirms, along with the great weight of authority in other circuits, that although § 1981 provides a right protecting against both private and state actors' violations, it does not provide a remedy for that violation against the state actor. *Dennis*, 55 F.3d at 156. When Congress has provided an explicit remedial scheme for a cause of

action (here, § 1983), the Supreme Court has refused to allow a private cause of action to be implied from another statute. *Jett*, 491 U.S. at 732 (citing *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453 (1974)).

> In other words, § 1981(c) can establish equal *rights* for parties against private and state defendants without establishing equal *remedies*; the fact that § 1981(c) establishes private right of action against private defendants does not lead to the conclusion that a parallel right must exist for suits against state defendants if such actions are provided for elsewhere in the statutory scheme.

*McGovern v. City of Philadelphia*, 554 F.3d 114, 118 (3rd Cir. 2009) (italics in original). Thus, in order to vindicate a state actor's violation of rights protected under § 1981, a plaintiff must pursue a cause of action under § 1983, rather than under § 1981. As explained herein, the former requires a plaintiff to plead the existence of a custom or policy of discriminatory conduct.

Although "[m]unicipal governments may be liable under federal law only for their own illegal or unconstitutional policies; they are not liable for the acts or omissions of their employees." *Torian v. City of Beckley*, 963 F. Supp. 565, 569–70 (S.D.W. Va. 1997). As the Supreme Court held in *Monell*,

> [T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we hold that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). "It is rather 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" *Torian*, 963 F. Supp. at 569 (quoting *Monell*, 436 U.S. at 694). *See also Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 653 (4th Cir. 2017) ("'To

24

hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation.'") (quoting *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 195 (4th Cir. 1994))).   The Fourth Circuit has held that "[a]n official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time' . . . and must be contrasted with 'episodic exercises of discretion in the operational details of government.'"   *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987)).

It is well-established that "not every decision by every municipal official will subject a municipality to Section 1983 liability. Rather, '[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'"   *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (citation omitted)).   "To qualify as a 'final policymaking official,' a municipal official must have the responsibility and authority to implement *final* municipal policy with respect to a particular course of action."   *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (italics in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986); citing *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.")).   The Fourth Circuit has held that "[t]he question of who possesses final policymaking authority is one of state law."   *Riddick v. Sch. Bd. of City of*

*Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (italics in original) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). In *Riddick*, the Fourth Circuit determined that "[t]he Constitution of Virginia vests control of the public school system in the local school boards. [t]his control includes the authority to supervise personnel." *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (citing Va. Const. art. VIII, § 7; *School Board v. Parham,* 218 Va. 950, 243 S.E.2d 468, 472 (1978)). Additionally, Va. Code Ann. § 22.1–313(A) provides that "[t]he school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals, suspensions and placing on probation." Va. Code Ann. § 22.1–313(A).

Count I contends that Plaintiff suffered racial and gender discrimination in violation of § 1981. ECF No. 1 at 10-11, ¶¶ 28-33. Like the undersigned's consideration of Plaintiff's Title VII race and gender claims, in the interest of clarity, the undersigned will also address these discrete claims separately.

### 1. § 1981 Race Discrimination

As previously explained in Part IV.B, *supra*, 42 U.S.C. § 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white persons." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-19 (4th Cir. 1999). However, Section 1981 does not confer a private right of action against state actors, therefore in order to vitiate Section 1981 rights allegedly violated by a state actor, an individual must pursue a remedy under Section 1983, which is "the exclusive federal remedy for a violation of rights guaranteed in § 1981" by a state actor. *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Furthermore, "a 'governmental entity is liable under § 1983' in an official capacity claim 'only when the entity itself is a moving force behind the deprivation,' and the

26

entity's 'policy or custom must have played a part in the violation of federal law.'" *Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 715 (E.D. Va. 2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citations omitted)). "Consequently, if [Plaintiff] wishes to state a claim against [this Defendant] for rights guaranteed to her under § 1981, she may only do so through a § 1983 claim." *James v. Univ. of Maryland, Univ. Coll.*, No. CIV. PJM 12-2830, 2013 WL 3863943, at *2 (D. Md. July 23, 2013).

Here, Plaintiff has filed suit against a School Board. Consequently, she is required to assert her claims pursuant to § 1983. This she has not done, and instead, has pleaded a racial discrimination claim pursuant to Sections 1981 and 1981a. *See* ECF No. 1 at 2 ("Plaintiff files this action pursuant to . . . 42 U. S. C. [sic] Sections 1981, and 1981a."). *See also* ECF No. 1 at 10 ("COUNT I – RACE AND GENDER DISCRIMINATION VIOLATIONS OF 42 U.S.C. SECTIONS 1981 AND 1981A AND TITLE VII) (capitalization in original). Because "§ 1983 is the exclusive remedy for violations of § 1981 by state actors. . . . [Plaintiff] has no cause of action based on § 1981 independent of § 1983." *Farmer v. Ramsay*, 43 F. App'x 547, 553 (4th Cir. 2002) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). *See also Lewis v. Robeson County*, 63 F. App'x 134, 138 (4th Cir. 2003) ("In a suit brought against a state actor, [§] 1983 is the exclusive federal remedy for a violation of the rights guaranteed in § 1981.").

In addition to incorrectly identifying the federal statute under which to proceed, the undersigned's review of Count I reveals that Plaintiff has similarly failed to assert facts that would support a § 1983 claim, which requires the complainant to allege that discriminatory employment action of a state actor was taken pursuant to a custom or policy. Beyond Plaintiff's sole, conclusory allegation regarding the existence of Defendant's racially discriminatory custom

or policy, the Complaint is devoid of facts evidencing the existence of such. *See* ECF No. 1 at 4, ¶ 6 (alleging "defendants have a policy, habit, and custom of harassing, intimidating, discriminating [sic] against African American females above the age of 40 years in the application of its employment policies and procedures and otherwise adversely affecting the employment of African American females on the basis of racial, age, and gender prohibited employment practices [sic], according to plaintiff's information and belief.").

Notwithstanding the aforementioned pleading deficiencies, the undersigned also notes that its previous consideration and dismissal of Plaintiff's Title VII race discrimination claim pursuant to Rule 12(b)(6) similarly dictates dismissal of Plaintiff's § 1981/1983 racial discrimination claim. *See* Part IV.A.1, *supra*. Like a Title VII claim, when asserting a claim under Section 1983 a plaintiff must allege facts that give rise to an inference of disparate treatment based on racial animus.[6] *See Sillah v. Burwell*, 244 F. Supp. 3d 499, 511-12 (D. Md. 2017) ("In the employment context, courts analyze claims of racial discrimination brought under § 1981 consistent with those brought under Title VII of the Civil Rights Act of 1964. . . . Thus, to survive a motion to dismiss, a complaint under § 1981 must allege facts allowing for a reasonable inference that an employer treated the complaining employee adversely because of the complainant's race.") (citing *Gairola v. Va. Dept. of Gen. Serv.*, 753 F.2d 1281, 1285 (4th Cir. 1985); *McCleary–Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). *See also Toomer-Frazier v. Columbia, City of*, 680 F. App'x 244, 245 n.1 (4th Cir. 2017) (explaining that "the standards applicable to § 1983 claims apply in this case,

---

[6] However, "[u]nlike race-based Title VII claims, . . . a plaintiff need not exhaust administrative remedies under § 1981." *Sillah v. Burwell*, 244 F. Supp. 3d 499, 512 (D. Md. 2017) (citing *Qualls v. Giant Food, Inc.*, 187 F. Supp. 2d 530, 534 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003)).

which was brought under § 1981").

Ultimately, the Complaint is devoid of facts to support Plaintiff's conclusory allegations that Pinello and/or Defendant discriminated against Plaintiff on the basis of race, and certainly not pursuant to an official policy or custom. Therefore, dismissal is warranted. *See Ross v. Cty. of Franklin, Virginia*, No. 7:14-CV-0051, 2015 WL 7308678, at *5 (W.D. Va. Nov. 19, 2015) ("[T]he complaint does not contain sufficient facts to show that she discriminated against Ross pursuant to any official policy or custom that can be attributed to the County. The complaint merely alleges that Powell, since she began working at the Department, either fired older workers or those workers quit. This allegation is insufficient to make out a plausible claim that the County had an official policy or custom of discrimination to satisfy § 1983. Because § 1983 is the exclusive remedy for a § 1981 violation, Ross' claim against the County under § 1981 also fails. Accordingly, the motion to dismiss will be granted with respect to that claim.").

The undersigned finds that Count I of the Complaint does not assert claim under 42 U.S.C. § 1983 in either form or substance. *See* ECF No. 1, *passim*. Therefore the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Count I be **GRANTED** as to this claim and that Plaintiff's §§ 1981/1983 race claim be **DISMISSED WITHOUT PREJUDICE**.[7]

### 2. § 1981 Gender Discrimination

Count I also appears to assert a cause of action for violation of § 1981 purportedly on the basis of gender-based discrimination. *See* ECF No. 1 at 11, ¶ 30 ("Furthermore, defendants allowed and encouraged [Plaintiff's] male co-worker, Glenn Holk, to seek a transfer to another school rather than to terminate his employment as an older professional educator. This constituted *gender discrimination* as defendants favored Caucasian males over here as an African American female.") (emphasis added). As previously noted, it is well-established that

---

[7] *See* Part IV.C., *infra*.

29

"Section 1981 bars discrimination on the basis of *race and ethnicity,* or lack of citizenship." *Saad v. Baltimore Life Ins. Co.*, 47 F. App'x 228, 232 (4th Cir. 2002) (quoting *Duane v. GEICO,* 784 F. Supp. 1209, 1216 (D. Md. 1992), *aff'd,* 37 F.3d 1036 (4th Cir. 1994)) (emphasis added). "Section 1981 is not, however, a vehicle for vindicating gender or age discrimination in the workplace or in contractual relations." *Grant v. Adventist Health Sys. Sunbelt Health Care Corp.*, No. 1:09CV79, 2009 WL 6315308, at *9 (W.D.N.C. July 28, 2009), *report and recommendation adopted*, No. 1:09CV79, 2010 WL 1257624 (W.D.N.C. Mar. 25, 2010) (citing *Estate of Shelia Williams-Moore v. Alliance One Receivables Management, Inc.,* 335 F. Supp. 2d 636, 647 n.4 (M.D.N.C. 2004); *Candillo v. North Carolina Dept. of Correction,* 199 F. Supp. 2d 342 (M.D.N.C. 2002)). Rather, as Defendant notes, Section 1981 provides an avenue for persons to challenge contractual discrimination based on *race* only. *See* ECF No. 12 at 7 n.1 (citing *Runyon v. McCrary,* 427 U.S. 160, 167 (1976)). *See also Liegeois v. Johns Hopkins Med.*, No. JFM-15-2919, 2016 WL 1625121, at *3 (D. Md. Apr. 21, 2016), *aff'd,* 692 F. App'x 714 (4th Cir. 2017) ("Section 1981 covers only claims for race and retaliation for complaining about racial discrimination.").

Moreover, Plaintiff makes no effort to clarify and/or defend the availability of a Section 1981 gender claim. *See* ECF No. 13, *passim.* Given her failure to do so, and tacit concession that no such claim exists, dismissal with prejudice of this claim is appropriate. *See Westry v. North Carolina AT&T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), *aff'd,* 94 F. App'x 184 (4th Cir. 2004) (finding that plaintiff waived a claim by failing to address defendant's refutation of it). *See also Wright v. Kent Cty. Dep't of Soc. Servs.*, No. CIV.A. ELH-12-3593, 2014 WL 301026, at *25 (D. Md. Jan. 24, 2014) (citing *Ferdinand–Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's]

30

argument" in a motion to dismiss, "the plaintiff abandons [her] claim.")). Because no such cause of action exists, Defendant's Motion to Dismiss is appropriately granted under both Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

Accordingly, the undersigned **RECOMMENDS** that with respect to this claim, Defendant's Motion to Dismiss Count I be **GRANTED**, and that Plaintiff's § 1981 gender claim be **DISMISSED WITH PREJUDICE.**[8]

### C. Nature of Dismissal and Leave to Amend

Plaintiff's Title VII race discrimination claim amounted to nothing more than conclusory allegations that Plaintiff was wrongly terminated from employment based on race, and experienced racially disparate treatment, including being subjected to "high scrutiny of her work, by placing heavier workloads on [Plaintiff], and by assigning problem students to [Plaintiff]." ECF No. 1 at 11. The Complaint is ambiguous as to whether Plaintiff's inclusion of such allegations are meant to constitute discrete, actionable examples of racially disparate treatment or are offered as evidence of racially discriminatory animus. Either way, Plaintiff has alleged insufficient facts in the Complaint to support the conclusion that she was terminated from employment based on race or otherwise suffered disparate treatment based on race. Nevertheless, because it is possible that there may be facts which support such conclusions, the undersigned **RECOMMENDS** that Plaintiff be **GRANTED** leave to amend her Complaint to give her an opportunity to remedy the numerous pleading deficiencies and properly assert a Title VII race discrimination claim.

Because Plaintiff failed to exhaust her administrative remedies regarding a claim for gender discrimination under Title VII, any amendment would be futile. Thus, the undersigned

---

[8] *See* Part IV.C., *infra.*

31

**RECOMMENDS** that leave to amend any Title VII gender discrimination claim be **DENIED.**

With respect to Plaintiff's attempt to plead a racial discrimination claim pursuant to §§ 1981 and/or 1983, Plaintiff asserted only in conclusory fashion that Defendant has "a policy, habit, and custom of harassing, intimidating, discriminating [sic] against African American females above the age of 40 years," ECF No. 1 at 4, ¶ 6, but failed to include any further factual allegations or support. Nevertheless, because it is possible that there may be facts which support the conclusion that Plaintiff was subject to disparate treatment due to race based on a governmental policy or custom of Defendant, the undersigned **RECOMMENDS** that Plaintiff be **GRANTED** leave to amend this claim to vindicate the purported violation(s) of her rights protected by § 1981 by invoking the correct statute (§ 1983), and by alleging facts that would support a policy or custom of racial discrimination.

Finally, because § 1981 is not a vehicle for vindicating gender discrimination in the workplace, any amendment would be futile. Therefore, the undersigned **RECOMMENDS** that leave to amend any § 1981 gender discrimination claim be **DENIED.**

## V. RECOMMENDATIONS

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Count I (ECF No. 11) be **GRANTED** and that Count I of Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** as to Plaintiff's Title VII and § 1981 gender claims. However, the undersigned **RECOMMENDS** that Plaintiff's Title VII and § 1981 race discrimination claims be **DISMISSED WITHOUT PREJUDICE** to give Plaintiff the opportunity to amend only these claims.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

32

1.   Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Fed. R. Civ. P. 6(a).   A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.   The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.   The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 5, 2018