## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**DANNETTA G. SPELLMAN,**

      **Plaintiff,**

v.                                  **Case No.  2:17cv635**

**THE SCHOOL BOARD OF THE CITY**
**OF CHESAPEAKE, VIRGINIA,**

      **Defendant.**

### <u>REPORT AND RECOMMENDATION</u>

On December 11, 2017, Plaintiff Dannetta G. Spellman ("Plaintiff") instituted this cause of action by filing a two count Complaint, asserting that her former employer, the City of Chesapeake, Virginia Public Schools and the School Board of the City of Chesapeake, Virginia had discriminated against her in her former employ as a public school teacher. ECF No. 1. On January 30, 2018, pursuant to a joint stipulation between the parties, the claims against Defendant City of Chesapeake, Virginia Public Schools were dismissed with prejudice, leaving the School Board of the City of Chesapeake, Virginia ("Defendant") as the sole Defendant in this action. *See* ECF No. 9 ("Joint Stipulation").  On February 27, 2018, Defendant filed its first Motion to Dismiss and Memorandum in Support, seeking dismissal of the first count of the Complaint. ECF No. 11-12. The Chief United States District Judge referred the matter to the undersigned United States Magistrate Judge ("the undersigned") for a Report and Recommendation. ECF No. 17. On April 5, 2018, the undersigned entered a Report and Recommendation that recommended granting Defendant's Motion to Dismiss, but allowing Plaintiff the opportunity to amend her Complaint. ECF No. 19. The recommended disposition was accepted in full by the Chief United States District Judge, and Plaintiff was given until May

21, 2018, to file an Amended Complaint. ECF No. 20.

On May 21, 2018, Plaintiff timely filed an Amended Complaint containing three counts: (1) racial discrimination in violation of Title VII; (2) racial discrimination in violation of 42 U.S.C. ¶¶ 1981, 1983, and due process rights under the Fourth and Fourteenth Amendments of the United States Constitution; and (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). ECF No. 21. On June 4, 2018, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint (and Memorandum in Support) as to all counts of the Amended Complaint. ECF Nos. 22-23.

## I. INTRODUCTION

Before the Court is Defendant School Board of the City of Chesapeake, Virginia's Motion to Dismiss for Failure to State a Claim and accompanying Memorandum in Support, filed on June 4, 2018. ECF Nos. 22-23. The Motion asserts that the Amended Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff timely filed both an Opposition and an Amended Opposition thereto, ECF Nos. 24, 27, to which Defendant filed a Reply, ECF No. 29. On July 2, 2018, this matter was again referred to the undersigned for a report and recommendation pursuant to a Referral Order from the Chief United States District Judge. ECF No. 31; *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. Notwithstanding Plaintiff's Request for a Hearing on Defendant's Motion to Dismiss Plaintiff Spellman's Amended Complaint, ECF No. 26, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss the Amended Complaint, ECF No. 22, be **GRANTED IN PART** and **DENIED IN PART.**

2

## II. STANDARD OF REVIEW

Defendant has moved to dismiss the Amended Complaint's three counts pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 23, *passim*.

### A. Rule 12(b)(6)

A motion filed under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint. *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). In considering this motion, the Court must assume that the facts alleged are true, and view them in the light most favorable to the plaintiff. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Federal Rule of Civil Procedure 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To be sufficient under Rule 8, the pleading must meet two basic requirements: (1) it must contain sufficient factual allegations and (2) those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) ("The Supreme Court has accordingly held that Rule 8(a)(2) requires that 'a complaint . . . contain[ ] sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face' in the sense that the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (emphasis in original) (alternations in original) (quoting *Iqbal*, 556 U.S. at 678); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012)) (finding a complaint inadequate because its

3

allegations "fail[ed] to establish a plausible basis for believing . . . that race was the true basis for [the adverse employment action]").

First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do;" rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Second, to "nudge[] their claims across the line from conceivable to plausible," *id.* at 570, "plaintiff[s] [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Indeed, to achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Consequently, when considering a motion to dismiss, only those allegations which are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that legal conclusions must be supported by factual allegations). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal citations omitted).

### III. FACTUAL AND PROCEDURAL BACKGROUND

As it must, the undersigned assumes the following facts alleged in the Amended Complaint, ECF No. 21, are true. These facts include that on or about February 28, 2017, Plaintiff's employment as a public school teacher in the City of Chesapeake, Virginia was officially terminated by Defendant. *Id.* at 13, ¶ 29. Plaintiff was initially hired in February 1984

4

and served as an educator for thirty-two (32) years as both a classroom teacher and as a continuing contract teacher until her termination, primarily at Hickory Elementary School, located in Chesapeake, Virginia. *Id.* at 7, ¶¶ 18-19; *see also Id.*, attach. 1 at 1. In the 2013-2014 school year, Kimberly Pinello ("Pinello"), a white female, became principal of Hickory Elementary School and Plaintiff's direct supervisor. *Id.* at 8, ¶ 20. Prior to Pinello's administration, Plaintiff had received satisfactory annual performance evaluations and was never subjected to disciplinary actions. *Id.* at 7-8, ¶ 20. Sometime after Pinello's arrival, Pinello placed Plaintiff on a performance improvement plan ("PIP"). *Id.* at 8, ¶ 21. On or about May 31, 2016, Pinello recommended Plaintiff's dismissal to Defendant on the grounds that Plaintiff was incapable of competent job performance. *Id.* at 12-13, ¶ 25. At the time of Plaintiff's proposed termination, Plaintiff was 60 years old and one of only two black educators at Hickory Elementary School, out of a total of approximately thirty (30) educators. *Id.* at 2, ¶ 2; *Id.* at 13, ¶ 26. The other black educator was thirty-three (33) years old. *Id.* at 13, ¶ 26. Ultimately, Defendant accepted Pinello's recommendation, and upheld the termination of Plaintiff's employment on February 28, 2017. *Id.* at 10, ¶ 27.

On March 16, 2017, Plaintiff filed a Charge of Discrimination with the Virginia EEOC. *Id.*, attach. 1. In this Charge, Plaintiff alleged that she had been subject to race and age discrimination in her termination and also in the time leading up to her termination in violation of Title VII of the Civil Rights Act of 1964. *See id.*, attach. 1 at 1 (checking "race" and "age" boxes when asked to indicate the basis of the alleged discrimination). The EEOC issued a Notice of Right to Sue on September 13, 2017, which Plaintiff received by mail on September 15, 2017. *Id.*, attach. 2; *see also id.* at 6, ¶ 16.

On December 11, 2017, Plaintiff filed a two count Complaint in this Court. ECF No. 1.

The Court interpreted Count I as asserting four claims: (1) race discrimination pursuant to Title VII; (2) gender discrimination pursuant to Title VII; (3) race discrimination under 42 U.S.C. § 1981 ("§ 1981"); and (4) gender discrimination under § 1981. *See id.* at 10-11, ¶¶ 28-33. Count II asserted a claim for age discrimination. *See id.* at 12-13.

On February 27, 2018, Defendant filed a Motion to Dismiss Count I of the Complaint and an accompanying memorandum. ECF Nos. 11-12. Therein, Defendant argued that Count I should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for several reasons. First, Defendant contended that this Court lacks subject matter jurisdiction over Plaintiff's purported Title VII gender claim because she failed to exhaust her administrative remedies prior to filing suit. Second, Defendant argued Plaintiff failed to properly assert a claim under 42 U.S.C. § 1983 to vindicate rights protected by 42 U.S.C. § 1981 allegedly violated by a state actor. Third, Defendant argued no cognizable gender claim exists under § 1981 and/or § 1983. Finally, Defendant contended Plaintiff failed to allege facts to state a claim for racial discrimination under either Title VII or § 1981 and/or § 1983. ECF No. 12, *passim*. Ultimately, the undersigned issued a Report and Recommendation that recommended granting Defendant's Motion to Dismiss, but allowing Plaintiff to amend her Complaint. ECF No. 19. On May 21, 2018, Plaintiff timely filed her Amended Complaint alleging three claims: (1) race discrimination in violation of Title VII; (2) race discrimination in violation of § 1981 and § 1983 and due process rights; and (3) age discrimination. ECF No. 21 at 14-19, ¶¶ 30-48.

On June 4, 2018, Defendant filed a Motion to Dismiss Amended Complaint and an accompanying memorandum. ECF Nos. 22-23. Therein, Defendant makes several arguments. First, Defendant contends that Plaintiff failed to properly allege the requisite elements for a Title VII claim. ECF No. 23 at 4-10. Second, Defendant argues that Plaintiff fails to state a claim

under of § 1981 and § 1983 because she failed to identify a discriminatory custom or policy of the School Board that resulted in an adverse action against her. *Id.* at 10-11. Defendant also contends that Plaintiff fails to sufficiently plead a due process violation, of either procedural or substantive due process. *Id.* at 11-14. With respect to Plaintiff's claim that she was subjected to age discrimination, Defendant argues that Plaintiff failed to appropriately allege that her age was the "but for" cause of her termination. *Id.* at 14-15. According to Defendant, even if Plaintiff could substantiate either a race discrimination claim (under Title VII) or age discrimination claim, any allegedly discriminatory conduct of Pinello cannot be imputed to Defendant School Board because Pinello is not a supervisor within the meaning of Title VII or the ADEA. *Id.* at 15-20. Specifically, Defendant contends that no "cat's paw"[1] theory of liability exists to make Defendant vicariously liable for Pinello's actions. *Id.* at 19; *see Hill v. Lockheed Martin Logs.*, 354 F.3d 277, 290 (4th Cir. 2004) (en banc), *abrogated in part on other grounds, Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ("When a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker or the one principally responsible for the contested employment decision, so long as he otherwise falls within the parameters of the discrimination statute's definition of an employer or agent of the employer.").

On June 25, 2018, Plaintiff timely filed her Opposition. ECF No. 28.[2] In filing her

---

[1] *Staub v. Proctor Hosp.*, 562 U.S. 411, 416 n.1 (2011) ("The term 'cat's paw' derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by Posner in 1990. . . . In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing. A coda to the fable (relevant only marginally, if at all, to employment law) observes that the cat is similar to princes who, flattered by the king, perform services on the king's behalf and receive no reward.") (internal citations omitted).

[2] This Opposition is technically an Amended Opposition, but the purposes of this Report and Recommendation, the undersigned treats this as the operative Opposition. *See* ECF No. 34.

Opposition, Plaintiff also attached the following exhibits: three (3) affidavits, a copy of the Complaint she filed in Chesapeake Circuit Court for pay she did not receive during the pendency of her grievance process, and a letter from the Clerk of the School Board to her attorney advising that Plaintiff's request for another hearing was denied, and that Defendant had accepted the recommendation of the Hearing Officer to terminate her employment. *See* ECF No. 28, attachs. 1-5.

On June 29, 2018, Defendant timely filed its Reply. ECF No. 29. Therein, Defendant first notes that Plaintiff's Opposition to the Motion to Dismiss improperly seeks to supplement her pleadings through her inclusion of affidavits, her state court complaint, and a letter from Defendant, and observes that it would be improper for the Court to consider the same. *Id.* at 2-3 (citing *Rossman v. Lazarus*, No. 1:08-cv-316, 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008) ("[I]t is 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004)); *see also* Fed. R. Civ. P. 12(d) ("All parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint"); *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint). [3]

However, even if these exhibits are considered, Defendant contends that the Amended Complaint failed to allege that Defendant discriminated against Plaintiff on the basis of race or

---

[3] Accordingly, the undersigned declines to consider the Affidavits of the proposed comparators. *See* ECF No. 21, attach. 1 (Affidavit of Glenn Holk), attach. 2 (Affidavit of Theresa Hahn), attach. 3 (Affidavit of Patricia Ward).

age.  First, Defendant contends that Plaintiff's placement on the PIP and Pinello's allegedly discriminatory acts are not adverse employment actions, and furthermore, Plaintiff failed to identify similarly situated comparators.[4]  According to Defendant, even if Plaintiff was able to identify adverse employment actions and similarly situated comparators, Plaintiff's claims fail because she failed to allege that Defendant was motivated by race or age when it made the decision to accept the Hearing Officer's recommendation to terminate Plaintiff's employment. Notably, the Amended Complaint does not allege that Defendant was even aware of the allegedly discriminatory acts perpetuated by Pinello, and therefore Plaintiff's attempts to hold Defendant vicariously liable for Pinello's actions are fruitless.  ECF No. 29 at 6.  Pursuant to Va. Code § 22.1-313, Pinello had no independent authority to hire or fire Plaintiff, and therefore Pinello cannot be considered Plaintiff's supervisor under Title VII and/or the ADEA.  *See* Va. Code § 22.1-313 ("The school board shall retain exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals and suspensions.").  In addressing the "cat's paw" argument asserted by Plaintiff's Opposition, Defendant observes the dearth of factual basis in the Amended Complaint to support Plaintiff's contention that Defendant "rubber-stamped" Pinello's recommendation.  Rather, Defendant notes that pursuant to state law, Pinello made a recommendation to the Superintendent that Plaintiff be terminated, the Superintendent reviewed the matter and made a recommendation, Plaintiff received a hearing before a Hearing Officer where she was given the opportunity to

---

[4] In support of its argument for why the identified comparators are not similarly situated, Defendant commits the same sin of which it accuses Plaintiff: relying on information about the proposed comparators that is not included in the Amended Complaint, or relying on information contained in the offending Affidavits.  *See e.g.*, ECF No. 29 at 5 ("However, two of the alleged comparators were not even employed at Hickory during the time of the alleged discrimination.  Indeed, both Hahn and Ward state their employment at Hickory ended in June 2013.  Similarly, the third alleged comparator, Holk, left his employment in June of 2015, before Spellman was placed on the PIP, and well before the proposed May 31, 2016 dismissal.").  As the undersigned specifically declined to consider these Affidavits (as improperly submitted in support of an Opposition to a Motion to Dismiss), the undersigned similarly declines to consider Defendant's reliance on the same.  *See* note 3, *supra*.

present evidence, the Hearing Officer also recommended that Plaintiff's employment be terminated, and ultimately, Defendant accepted the Hearing Officer's recommendation. ECF No. 29 at 7. Additionally, Defendant argues that Plaintiff has failed to state a claim for a violation of § 1981 and/or § 1983 because she failed to identify a discriminatory policy or custom of Defendant. Defendant also contends that Plaintiff has failed to state a claim for violation of her procedural due process because although she enjoyed a property interest in her continuing contract status as a teacher, she was afforded all the procedural due process owed to her: oral or written notice of the charges against her, an explanation of Defendant's evidence, and an opportunity to participate and present a defense. *Id.* at 9 (citing *Holland v. Rimmeri*, 25 F.3d 1251, 1258 (4th Cir. 1994)). Finally, Defendant argues that Plaintiff fails to state a claim for violation of substantive due process, and points to controlling case law from this Division specifically holding that "'[a plaintiff's] interest in public employment, uninterrupted by disciplinary suspensions, is not a fundamental interest meriting substantive due process protection.'" *Id.* at 11 (quoting *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 615 (E.D. Va. 2015)).

## IV. DISCUSSION

### A. Title VII Race Claim

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2(a). Specifically, an employer may not discriminate against an individual with respect to her "compensation, terms, conditions, or privileges of employment." *Westry v. N.C. AT & T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), *aff'd*, 94 F. App'x 184 (4th Cir. 2004) (quoting 42 U.S.C. § 2000e–2(a)). In the Fourth Circuit, it is well-established that "[b]efore a

10

plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (citing *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000)). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Id.*

Thus, under the current statutory framework, "Title VII gives initial enforcement responsibility to the EEOC. An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)). A charge is acceptable only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* (quoting 29 C.F.R. § 1601.12(b) (2004)). After the charge has been filed, the EEOC investigates the alleged unlawful acts and provides notice of the charges to the employer within ten days. *Id.* at 508-09 (citing 42 U.S.C. § 2000e-5(b)). If the EEOC finds reasonable cause to believe the allegations are true, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* Irrespective of the outcome of the EEOC investigation, "[a]n individual cannot bring suit until he has exhausted the administrative process." *Id.* at 509 (citing 42 U.S.C. § 2000e-5(b), (f)(1); *Bryant,* 288 F.3d at 132; 29 C.F.R. § 1601.28).

Although "[a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow, [ ] the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant,* 288 F.3d at 132 (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). Thus, "if the factual allegations in the administrative charge are reasonably

11

related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Chacko*, 429 F.3d at 509 (citing *Smith*, 202 F.3d at 247-48 (indicating plaintiff exhausted administrative remedies when both formal complaint and administrative charge alleged she was retaliated against by management because she complained about supervisor's sexual harassment); *Chisholm*, 665 F.2d at 491; *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) ("The crucial element of a charge of discrimination is the factual statement contained therein.") (internal quotation marks omitted) (internal citation omitted); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.") (internal quotation marks omitted) (internal citations omitted)).

In Count I, Plaintiff contends that she suffered racial discrimination in violation of Title VII. ECF No. 21 at 14-16, ¶¶ 30-36. A plaintiff may properly assert a race discrimination claim pursuant to Title VII so long as he or she has properly exhausted his or her administrative remedies. The undersigned finds, and Defendant does not contest, that Plaintiff's March 16, 2017 Charge of Discrimination sufficiently alleged discrimination based on race, and therefore, the Court has subject matter jurisdiction to consider the claim. *See Id.*, attach. 1.

When asserting a claim for racial discrimination under Title VII, "a plaintiff may establish a claim of race discrimination by demonstrating through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Hill*, 354 F.3d at 284). Alternatively, if a plaintiff is unable to point to direct or indirect evidence of racial animus, then he or she may proceed by the *McDonnell Douglas* framework to establish a *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, it appears that the adverse

employment actions allegedly suffered by Plaintiff were her placement on a PIP (and assorted requirements of said PIP) and the ultimate termination of her employment. To succeed on a claim of racial discrimination and wrongful termination due to intentional discrimination under Title VII, in the absence of direct evidence, a plaintiff must carry his or her burden under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), by "demonstrat[ing] '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman*, 626 F.3d at 190); *see also Tex. Dep't of Comm. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981). "This framework requires, initially, that a plaintiff prove by a preponderance of the evidence a prima facie case for intentional discrimination." *Emami v. Bolden*, 241 F. Supp. 3d 673, 679 (E.D. Va. 2017) (citing *Burdine*, 450 U.S. at 252-53). In cases within the Fourth Circuit, "[f]or wrongful termination, the prima facie case requires such proof of the following: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Emami*, 241 F. Supp. 3d at 679-80 (quoting *Coleman*, 626 F.3d at 190).

With respect to the third element, "[t]o be cognizable under Title VII's prohibition on workplace discrimination, the employer must engage in an 'adverse employment action.'" *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016), *motion to certify appeal denied,* No. 3:15CV569, 2016 WL 3922053 (E.D. Va. July 20, 2016) (citing *Goode*, 807 F.3d at 625). To be sure, "Title VII protects against adverse employment actions, [but] not all workplace injustices." *Id.* at 819; *see also Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D.

Md. 2003) ("Although something less than an 'ultimate employment decision' may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy.") (citing *Settle v. Balt. Cty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999), *aff'd mem.*, 203 F.3d 822 (4th Cir. 2000)).  As the Supreme Court observed in *Burlington Northern and Santa Fe Railway Company v. White*, the words included in 42 U.S.C. § 2000e-2(a)(1), "Title VII's core antidiscrimination provision," (including "hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee") "explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." 548 U.S. 53, 62 (2006). Thus, "[a]n adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland*, 487 F.3d at 219 (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)).  Additionally, because her placement on the PIP and apparent failure to comport with the PIP requirements were ultimately used as a justification for her termination, Plaintiff's placement on a PIP could also be considered an adverse employment action, in addition to her actual termination. *See Wooten v. Gruenberg*, No. 1:15-CV-724, 2016 WL 1364043, at *5 (E.D. Va. Apr. 4, 2016), *aff'd*, 678 F. App'x 168 (4th Cir. 2017) ("Similarly, 'where an employee's failure to meet the performance objectives of probation establishes grounds for dismissal, placing an employee on probation may also be an adverse employment action.'") (quoting *Spriggs v. Senior Servs. of Se. Va.*, 2012 WL 1940761, at *7 (E.D. Va. May 29, 2012) *aff'd sub nom. Spriggs v. Senior. Serv. of Se. Va.*, 489 F. App'x 711 (4th Cir. 2012)); *see also Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 430 (E.D. Va. 2010) ("A modification in job duties and responsibilities, even duties that are encompassed within a former job description, may nevertheless constitute an adverse employment action.")).  With this

14

framework in mind, the undersigned considers the allegations in Count I of the Amended Complaint.

The Amended Complaint alleges no direct evidence of racial discrimination against Plaintiff. *See* ECF No. 21, *passim*. Throughout the allegations in the Charge of Discrimination and in her Amended Complaint, Plaintiff has presented no evidence of derogatory statements, writings, or actions by her supervisors or colleagues which were explicitly based on her race. Rather, her evidence of racial animus appears to be limited to three things: (1) the fact that at the time of her termination, she was one of only two black teachers out of a total of thirty educators at Hickory Elementary School, *Id.* at 13, ¶ 26; (2) evidence that four white co-workers (Theresa Hahn, Patricia Ward, Sondra Messmore, and Glenn Holk) who similarly taught fourth and fifth grade students but were not placed on a PIP or subject to the same racially motivated harassment that Plaintiff was, *Id.* at 14, ¶ 31; and (3) evidence that a white male co-worker (Glenn Holk) was permitted to seek a transfer to another school, but Plaintiff was denied such opportunity, *Id.* at 15, ¶ 34. Thus, because Plaintiff alleged no direct evidence of discrimination, she must rely on the *McDonnell Douglas* burden-shifting framework to prove disparate treatment by indirect evidence.

To be sure, Plaintiff is a member of a protected class and her placement on a PIP and ultimate termination amounts to adverse employment actions, thus satisfying the first and third elements of a *prima facie* Title VII racial discrimination claim, respectively. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) ("Cook, who is black, is a member of the protected class"); *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) ("Typical examples of adverse employment actions include '***discharge***, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'")

15

(emphasis added) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).

With respect to the second element, Plaintiff alleges that her performance was satisfactory because prior to her placement on what Plaintiff characterizes as a "bogus" and "unwarranted" PIP, ECF No. 1 at 8, ¶ 21, and that she had never been subjected to disciplinary or remedial measures.   In this procedural posture, and the standards governing a court's consideration of a motion to dismiss for failure to state a claim, the undersigned finds that Plaintiff has sufficiently alleged facts that she satisfactorily performed her job at the time of her termination.  *See id.* at 8, ¶ 20 ("Throughout her employment with defendants, [Plaintiff] received annual performance evaluations by defendants that were satisfactory and no disciplinary action of any type was ever taken against her by defendants until [Pinello], a Caucasian female, became her principal and supervisor at Hickory Elementary School in the 2013-2014 School Year.").  Thus, the survival of this claim depends on whether the Amended Complaint contains sufficient facts to support the fourth element (different treatment from similarly situated employees outside the protected class).

Regarding this final element, Plaintiff alleges facts sufficient to identify at least four suitable comparators.  To be sure, "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)).  If, however, a plaintiff does "rely upon comparators . . . the given comparators must be 'similar in all relevant respects.'" *Emami*, 241 F. Supp. 3d at 680 (quoting *Haywood*, 387 F. App'x at 359.  In *Haywood v. Locke*, the Fourth Circuit held that "a showing of similarity to comparators 'would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such

16

differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Emami*, 241 F. Supp. 3d at 680 (alteration in original) (quoting *Haywood*, 387 F. App'x at 359). "Comparators need not be identical; rather, they must be similar in all <u>relevant</u> aspects, 'such as conduct, performance, and qualifications.'" *Id.* at 680 (emphasis in original) (quoting *Rayyan v. Va. Dep't of Trans.*, No. 1:15cv01681, 2017 WL 123442, at *3 (E.D. Va. Jan. 12, 2017).

The comparators identified in the Amended Complaint are white co-workers (and fellow fourth and fifth grade teachers) Theresa Hahn ("Hahn"), Sondra Messmore ("Messmore"), Patricia Ward ("Ward"), and Glenn Holk ("Holk"), a white, male coworker that Defendant allegedly permitted to transfer to another school "rather than to terminate his employment as an older professional educator." ECF No. 21 at 15, ¶ 33. Under the deferential Motion to Dismiss standard, the factual allegations asserted in the Amended Complaint establish a plausible basis for believing that Hahn, Messmore, Ward, and Holk and Plaintiff were actually similarly situated and give rise to the inference that race was the true basis for Plaintiff's placement on a PIP and ultimate termination.[5] *See Booth*, 186 F. Supp. 3d at 486 ("An inference of race or gender discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances.") (citing *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)); *see also Sillah v. Burwell*, 244 F. Supp. 3d 499, 513 (D. Md. 2017) ("Put differently, bare allegations that white colleagues were treated more favorably amounts to little more than speculation that the adverse treatment of Plaintiff was race-based."); *Lewis v. City of Va. Beach*, No. 2:15CV321,

---

[5] Although Defendant has attempted to identify reasons why these proposed comparators are not similarly situated, the undersigned has already explained its refusal to rely on information included in the Affidavits and sources beyond the Amended Complaint. *See* notes 3-4, *supra*. Any complaint as to the suitability of proposed comparators is a task better left to the Motion for Summary Judgment stage.

2016 WL 4766515, at *15 (E.D. Va. Sept. 12, 2016) ("As the Fourth Circuit explains, 'conclusory statements, without specific evidentiary support' are insufficient to establish that alleged acts of mistreatment were based on a litigant's race.") (quoting *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)). Here, the Amended Complaint, ECF No. 21, contains specific allegations that describe disparate treatment, including, but limited to the following allegations: only Plaintiff, and not her white co-workers, were required by Pinello to send letters to students' parents surveying whether she was a knowledgeable and competent teacher, *id.*, ¶ 22(a); only Plaintiff was required to submit weekly lesson plans to Pinello, *id.*, ¶ 22(b); all students with behavioral problems and academic deficiencies were placed in Plaintiff's classroom instead of being evenly distributed amongst her white co-workers' classes, *id.*, ¶ 22(d); only Plaintiff was subject to outside observation and critique, *id.*, ¶ 22(f) & (g); while all similarly situated teachers were required to use a book about Jackie Robinson as part of their instructional materials, but only Plaintiff was chastised by Pinello for using the word "Negro" when teaching from the book, despite the fact that "Negro" was used in the book, *id.*, ¶ 22(j); and only Plaintiff was removed from her position as "lead social studies teacher" but other similarly situated comparators were not relieved of such "lead" duties, *id.*, ¶ 22(k).

In sum, although the Amended Complaint does, to some extent, conclusorily allege that Plaintiff was placed on a PIP and ultimately terminated based on her race, *see Booth*, 186 F. Supp. 3d at 486 ("Because two coworkers treated differently for the same offense might not be similarly situated if they have different job responsibilities or circumstances, a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination."); *see also Coleman*, 626 F.3d at 190-91 (affirming dismissal of a Title VII discrimination claim where the complaint named a comparator

but did not allege facts establishing that the comparator was similarly situated), the Amended Complaint does, at other points, assert facts establishing the plausibility of that allegation, *see Coleman*, 626 F.3d at 190-91. Because of the factual considerations involved, the question of whether Pinello's actions are properly attributable to Defendant so as to impose liability is not a question properly before the undersigned at the Motion to Dismiss stage.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Count I be **DENIED** on this basis.

B. Section 1981 Racial Discrimination Claims

It is "well established that [section] 1 of the Civil Rights Act of 1866, 14 Stat. 27, 42 U.S.C. § 1981, prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168-69 (1976) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975); *Tillman v. Wheaton-Haven Recreation Assn.*, 410 U.S. 431, 439-40 (1973); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441-43 n.78 (1968)). Here, Plaintiff has initiated a cause of action against a state actor, namely, the School Board of the City of Chesapeake, Virginia, thus her action is not one seeking enforcement of a private contract.[6] In *Jett v. Dallas Independent School District*, the Supreme Court held "that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. 701, 735 (1989). Thus, *Jett* provided that a plaintiff must meet the requirements of § 1983 to prevail on a claim against a school board. *Id.* at 735-36 (requiring the plaintiff to show that "a[n]

---

[6] Plaintiff concedes as much in the portion of her Amended Complaint describing the parties. *See* ECF No. 21 at 5, ¶ 13 ("Defendant City of Chesapeake School Board ('School Board') is a legal entity that functions under the auspices of the authority granted to it by the City of Chesapeake and the Commonwealth of Virginia. The School Board operates and controls the Chesapeake Public Schools, individually and in their official capacities as employees of the School Board.").

[official school district] custom or policy" violated his "right to make contracts"). Subsequently, Congress amended § 1981 through the Civil Rights Act of 1991 to include in subsection (c) that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Since § 1981's amendment, seven circuits have considered whether § 1981 contains both a protected right and an implied cause of action. In *Dennis v. County of Fairfax*, the Fourth Circuit held that Congress did not create a cause of action against state actors under § 1981. 55 F.3d 151, 156 (4th Cir. 1995) (holding that "[t]o the extent that [the plaintiff's claims of racial discrimination] were pleaded under § 1981, they run afoul of *Jett*. . . .[T]he § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities"); *see also Windsor v. Bd. of Educ. of Prince George's Cty.*, No. CV TDC-14-2287, 2016 WL 4939294, at *12 (D. Md. Sept. 13, 2016) (observing that in *Dennis*, the Fourth Circuit "held that § 1981(c) does not alter the holding of *Jett*, such that 'the § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities.'") (quoting *Dennis*, 55 F.3d 151, 156 (4th Cir. 1989)).

Along with the Fourth Circuit, the majority of circuits to consider this issue have held that § 1981 does not contain an implied cause of action against a state actor. While the Third, Fifth, Sixth, Tenth, and Eleventh Circuits have held in agreement with the Fourth Circuit, only the Ninth Circuit has held that § 1981 can provide a cause of action against a state actor independent of § 1983. *Compare Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996), *with McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012), *and McGovern v. City of Phil.*, 554 F.3d 114, 118 (3rd Cir. 2009), *Bolden v. City of Topeka*, 441

F.3d 1129, 1137 (10th Cir. 2006), *Oden v. Okibbeha Cty.*, 246 F.3d 459, 463-64 (5th Cir. 2001), *Butts v. Volusia Cty.*, 222 F.3d 891, 894 (11th Cir. 2000).

Admittedly, case law within the Fourth Circuit on this issue "is somewhat murkier than that of other circuits;" *James v. Univ. of Md.*, No. PJM 12-2830, 2013 WL 3863943, *2 n.1 (D. Md. July 23, 2013), however, *Dennis* remains binding precedent on this Court, and as recognized by other district courts within this Circuit, still controls, *see id.* at *1-2; *Victor v. Kronmiller*, 553 F. Supp. 2d 533, 542-43 (D. Md. 2008). *Dennis* confirms, along with the great weight of authority in other circuits, that although § 1981 provides a right protecting against both private and state actors' violations, it does not provide a remedy for that violation against the state actor. *Dennis*, 55 F.3d at 156. When Congress has provided an explicit remedial scheme for a cause of action (here, § 1983), the Supreme Court has refused to allow a private cause of action to be implied from another statute. *Jett*, 491 U.S. at 732 (citing *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453 (1974)).

> In other words, § 1981(c) can establish equal *rights* for parties against private and state defendants without establishing equal *remedies*; the fact that § 1981(c) establishes private right of action against private defendants does not lead to the conclusion that a parallel right must exist for suits against state defendants if such actions are provided for elsewhere in the statutory scheme.

*McGovern*, 554 F.3d at 118 (emphasis in original). Thus, in order to vindicate a state actor's violation of rights protected under § 1981, a plaintiff must pursue a cause of action under § 1983, rather than under § 1981. As explained herein, the former requires a plaintiff to plead the existence of a custom or policy of discriminatory conduct.

Although "[m]unicipal governments may be liable under federal law only for their own illegal or unconstitutional policies; they are not liable for the acts or omissions of their employees." *Torian v. City of Beckley*, 963 F. Supp. 565, 569-70 (S.D.W. Va. 1997).  As the Supreme Court famously held:

> [T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we hold that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis added).  "It is rather 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'"  *Torian*, 963 F. Supp. at 569 (quoting *Monell*, 436 U.S. at 694); *see also Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 653 (4th Cir. 2017) ("'To hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation.'") (quoting *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)).  The Fourth Circuit has held that "[a]n official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time' . . . and must be contrasted with 'episodic exercises of discretion in the operational details of government.'"  *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986); *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987)).

It is well-established that "not every decision by every municipal official will subject a municipality to Section 1983 liability. Rather, '[m]unicipal liability attaches only where the

decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "To qualify as a 'final policymaking official,' a municipal official must have the responsibility and authority to implement *final* municipal policy with respect to a particular course of action." *Riddick*, 238 F.3d at 523 (emphasis in original) (quoting *Pembaur*, 475 U.S. at 482-83); *see also Spell*, 824 F.2d at 1386 ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government."). The Fourth Circuit has held that "[t]he question of who possesses final policymaking authority is one of state law." *Riddick*, 238 F.3d at 523 (emphasis in original). In *Riddick*, the Fourth Circuit determined that "[t]he Constitution of Virginia vests control of the public school system in the local school boards. [t]his control includes the authority to supervise personnel." 238 F.3d at 523 (citing Va. Const. art. VIII, § 7; *Sch. Bd. v. Parham*, 218 Va. 950, 243 S.E.2d 468, 472 (1978)). Additionally, Va. Code Ann. § 22.1–313(A) provides that "[t]he school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals, suspensions and placing on probation." Va. Code Ann. § 22.1–313(A).

Count II contends that Plaintiff suffered racial discrimination in violation of § 1981 and § 1983, and procedural and substantive due process in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. ECF No. 21 at 16-18, ¶¶ 37-42. In the interest of clarity, the undersigned will also address these discrete claims separately.

*1. § 1981 Race Discrimination*

As previously explained, 42 U.S.C. § 1981 grants all persons within the jurisdiction of

the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white persons." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-19 (4th Cir. 1999). However, § 1981 does not confer a private right of action against state actors, therefore in order to vitiate § 1981 rights allegedly violated by a state actor, an individual must pursue a remedy under § 1983, which is "the exclusive federal remedy for a violation of rights guaranteed in § 1981" by a state actor. *Dennis*, 55 F.3d at 156. Furthermore, "a 'governmental entity is liable under § 1983' in an official capacity claim 'only when the entity itself is a moving force behind the deprivation,' and the entity's 'policy or custom must have played a part in the violation of federal law.'" *Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 715 (E.D. Va. 2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "Consequently, if [Plaintiff] wishes to state a claim against [this Defendant] for rights guaranteed to her under § 1981, she may only do so through a § 1983 claim." *James*, 2013 WL 3863943 at *2.

Here, Plaintiff has filed suit against a school board. Consequently, she is required to assert her claims pursuant to § 1983. *See Farmer v. Ramsay*, 43 F. App'x 547, 553 (4th Cir. 2002) (holding that "§ 1983 is the exclusive remedy for violations of § 1981 by state actors. . . . [Plaintiff] has no cause of action based on § 1981 independent of § 1983") (citing *Jett*, 491 U.S. 701; *Dennis*, 55 F.3d at 156); *see also Lewis*, 63 F. App'x at 138 ("In a suit brought against a state actor, [§] 1983 is the exclusive federal remedy for a violation of the rights guaranteed in § 1981.").

The undersigned's review of Count II reveals that Plaintiff has failed to assert facts that would support a § 1983 claim, which requires the complainant to allege that discriminatory employment action of a state actor was taken pursuant to a custom or policy. Beyond Plaintiff's sole, conclusory allegation regarding the existence of Defendant's racially discriminatory custom

or policy, the Amended Complaint is devoid of facts evidencing the existence of such. *See* ECF No. 21 at 3-4, ¶ 6 (alleging "defendant has a policy, habit, and custom of harassing, intimidating, [and] discriminating against African American females above the age of 40 years in the application of its employment policies and procedures and otherwise adversely affecting the employment of African American females on the basis of race and age prohibited employment practices, according to plaintiff's information and belief.").

Notwithstanding the aforementioned pleading deficiencies, the undersigned also notes that the Court's dismissal of Plaintiff's Title VII and § 1981 race discrimination claims pursuant to Rule 12(b)(6) recommended dismissal without prejudice in order to permit Plaintiff the opportunity to allege the missing facts.   Plaintiff's failure to supply facts regarding any discriminatory policy or custom dictates dismissal of Plaintiff's § 1981/1983 racial discrimination claim now.   Like a Title VII claim, when asserting a claim under § 1983 a plaintiff must allege facts that give rise to an inference of disparate treatment based on racial animus.[7] *See Sillah*, 244 F. Supp. 3d 499, 511-12 (D. Md. 2017) ("In the employment context, courts analyze claims of racial discrimination brought under § 1981 consistent with those brought under Title VII of the Civil Rights Act of 1964. . . . Thus, to survive a motion to dismiss, a complaint under § 1981 must allege facts allowing for a reasonable inference that an employer treated the complaining employee adversely because of the complainant's race.") (citing *Gairola v. Va. Dept. of Gen. Serv.*, 753 F.2d 1281, 1285 (4th Cir. 1985); *McCleary–Evans*, 780 F.3d at 585; *see also Toomer-Frazier v. City of Columbia*, 680 F. App'x 244, 245 n.1 (4th Cir. 2017)

---

[7] However, "[u]nlike race-based Title VII claims, . . . a plaintiff need not exhaust administrative remedies under § 1981." *Sillah*, 244 F. Supp. 3d at 512 (citing *Qualls v. Giant Food, Inc.*, 187 F. Supp. 2d 530, 534 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003)).

(explaining that "the standards applicable to § 1983 claims apply in this case, which was brought under § 1981").

Ultimately, while the Amended Complaint does contain some facts to support Plaintiff's allegations that Pinello and/or Defendant discriminated against Plaintiff on the basis of race, it does not contain facts that such discrimination was done pursuant to an official policy or custom of Defendant.  Therefore, dismissal of this claim is warranted.  *See Ross v. Cty. of Franklin*, No. 7:14-CV-0051, 2015 WL 7308678, at \*5 (W.D. Va. Nov. 19, 2015) ("[T]he complaint does not contain sufficient facts to show that she discriminated against Ross pursuant to any official policy or custom that can be attributed to the County.  The complaint merely alleges that Powell, since she began working at the Department, either fired older workers or those workers quit. This allegation is insufficient to make out a plausible claim that the County had an official policy or custom of discrimination to satisfy § 1983.  Because § 1983 is the exclusive remedy for a § 1981 violation, Ross' claim against the County under § 1981 also fails.  Accordingly, the motion to dismiss will be granted with respect to that claim.").

The undersigned finds that Count II of the Amended Complaint does not assert a claim under 42 U.S.C. § 1983 in either form or substance.  The undersigned notes that Plaintiff was previously given the opportunity to amend her Complaint to assert facts that support the conclusion that Plaintiff was subject to disparate treatment due to race based on a governmental policy or custom of Defendant.  *See* ECF No. 19 at 32.  Plaintiff failed to provide such additional details.  *See* ECF No. 21, *passim.*  Therefore, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Count II be **GRANTED** as to this claim, and that Plaintiff's § 1981/1983 race claim be **DISMISSED WITH PREJUDICE**.

26

2. *Procedural Due Process*

Count II also appears to assert a cause of action for violation of Plaintiff's right to procedural due process in her termination. ECF No. 21 at 16-18, ¶¶ 38-42. "In order to state a § 1983 claim for deprivation of property without due process, plaintiff must show (i) that she has a constitutionally protected property interest, and (ii) that she has been deprived of that interest by state action." *Echtenkamp v. Loudon Cty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1053 (E.D. Va. 2003) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988); *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)). "Once these elements are established, the question turns to what process is due and whether it has been provided." *Echtenkamp*, 263 F. Supp. 2d at 1053 (citing *Stone*, 855 F.2d at 172 and *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).

To be sure, "[a] public school teacher in Virginia who has attained continuing contract status has a property interest protected by the due process clause." *Thurston v. Roanoke Sch. Bd.*, 26 F. Supp. 2d 882, 885 (W.D. Va. 1998) (citing *Bishop v. Wood*, 426 U.S. 341, 344-45 (1976); *Lee–Warren v. Sch. Bd. of Cumberland Cty.*, 792 F. Supp. 472, 473 (W.D. Va. 1991) (observing that the court had previously found that "continuing contact status amounted to a protected property interest...."); *Wilkinson v. Sch. Bd. of Henrico Cty.*, 566 F. Supp. 766, 769 (E.D. Va. 1983) (observing that a Virginia teacher with continuing contract status had a protected property interest in not having her employment suspended); Va. Code Ann. § 22.1–304 (providing that teachers who have completed the probationary period are entitled to continuing contracts during "good behavior and competent service")); *see also* Va. Code Ann. §§ 22.–1–309, 311-12 (establishing procedures for dismissing a teacher who has attained continuing contract status).

27

Here, at all relevant times, Plaintiff was employed under a continuing contract as defined by Va. Code Ann. § 22.1–304.   Pursuant to that section, Plaintiff was entitled to continuing contracts during good behavior and competent service and could be dismissed only for cause as provided in Va. Code Ann. § 22.1–307.   *Wilkinson*, 566 F. Supp. at 768; *see also* Va. Code Ann. § 22.1–307 ("Teachers may be dismissed for incompetency, immorality, noncompliance with school laws and regulations, disability as shown by competent medical evidence when in compliance with federal law, conviction of a felony or a crime of moral turpitude, or other good and just cause. . . . For the purposes of this article, 'incompetency' may be construed to include, but shall not be limited to, consistent failure to meet the endorsement requirements for the position or one or more unsatisfactory performance evaluations.").   Here, both elements—a constitutionally protected property interest and a deprivation of that interest by state action—are clearly established.   Accordingly, the question becomes "what process is due and whether it has been provided."   *Echtenkamp*, 263 F. Supp. 2d at 1053.

As Defendant accurately notes, "[i]n the pre-termination context, an employee is entitled to oral and written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."   ECF No. 23 at 12 (citing *Holland*, 25 F.3d at 1258).   Under Virginia law, the statutorily prescribed grievance process satisfies all of these requirements.   *See* Va. Code Ann. § 22.1–308 ("1. Except in the case of dismissal or placing on probation, a first step which shall provide for an informal, initial processing of a grievance by the most immediate appropriate supervisor through a discussion; 2. A requirement that all stages of the grievance beyond the first step be in writing on forms prescribed by the Board of Education and supplied by the school board; 3. A requirement that in reducing the grievance to writing, the teacher shall specify the specific relief sought through the use of the procedure; 4. The right of

28

the grievant and the respondent to present appropriate witnesses and be represented by legal counsel and another representative; 5. Reasonable time limitations, prescribed by the Board, for the grievant to submit an initial complaint and to appeal each decision through the steps of the grievance procedure which shall correspond generally or be equivalent to the time prescribed for response at each step; 6. Termination of the right of the grievant to further appeal upon failure of the grievant to comply with all substantial procedural requirements of the grievance procedure without just cause; 7. The right of the grievant, at his option, upon failure of the respondent to comply with all substantial procedural requirements without just cause, to advancement to the next step or, in the final step, to a decision in his favor; 8. A final step which shall provide for a final decision on the grievance by the school board . . ."); Va. Code Ann. § 22.1-309 ("In the event a division superintendent determines to recommend dismissal of any teacher, written notice shall be sent to the teacher notifying him of the proposed dismissal and informing him that within 10 business days after receiving the notice the teacher may request a hearing before the school board or, at the option of the local school board, a hearing officer appointed by the school board as provided in § 22.1-311.   During such 10-business-day period and thereafter until a hearing is held in accordance with the provisions of this section, if one is requested by the teacher, the merits of the recommendation of the division superintendent shall not be considered, discussed or acted upon by the school board except as provided for in this section.   At the request of the teacher, the division superintendent shall provide the reasons for the recommendation in writing or, if the teacher prefers, in a personal interview.   In the event a teacher requests a hearing pursuant to § 22.1-311, the division superintendent shall provide, within 10 days of the request, the teacher or his representative with the opportunity to inspect and copy his personnel file and all other documents relied upon in reaching the decision to recommend dismissal. Within

10 days of the request of the division superintendent, the teacher or his representative shall provide the division superintendent with the opportunity to inspect and copy the documents to be offered in rebuttal to the decision to recommend dismissal.  The division superintendent and the teacher or his representative shall be under a continuing duty to disclose and produce any additional documents identified later which may be used in the respective parties' cases-in-chief.").

Here, Plaintiff does not allege that there were procedural deficiencies related to her termination or that the process she received was constitutionally deficient.  Indeed, in her Amended Complaint (and the Exhibit she attached in support of her Opposition to the Motion to Dismiss), Plaintiff concedes that she was afforded the procedural due process outlined in the pertinent Virginia statutes.  *See* ECF No. 21, *passim*; *see also* ECF No. 21, attach. 5 at 1 ("on February 27, 2017[,] the Chesapeake School Board considered first Ms. Spellman's request for another hearing to present additional evidence.  This request was declined.  The School Board then considered the Recommendation of the Hearing Officer.  This recommendation was accepted, resulting in the termination of Ms. Spellman's employment.").[8]  She was presented with written notice of her proposed termination and given the opportunity to present her side at a

---

[8] Although the undersigned declined to consider the three Affidavits submitted in support of Plaintiff's Opposition to the Motion to Dismiss, the undersigned does find it appropriate to consider both Exhibit 4 (Plaintiff's state court complaint) and Exhibit 5 (the letter to Plaintiff's counsel from the School Board) because they are integral to the Amended Complaint and in the case of Exhibit 4, a matter of public record.  *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) ("However, there are exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed. . . . A district court may clearly take judicial notice of these public records, and Witthohn does not dispute their authenticity." (citing *Phillips*, 190 F.3d at 618) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint"); *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint"); *Blue Tree Hotels v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss")) (internal citations omitted).

hearing before the School Board accepted the recommendation of both the Superintendent and the Hearing Officer.   Even assuming *arguendo*, that Plaintiff alleged a violation in the state-mandated procedural due process procedure (which she does not), this would be insufficient to state a claim because "a violation of grievance procedures guaranteed under state law does not, by itself, constitute a failure to provide adequate due process under the standards of the federal Constitution." *Echtenkamp*, 263 F. Supp. 2d at 1055 ("As the Fourth Circuit has made clear, so long as 'minimal [Fourteenth Amendment] due process requirements of notice and hearing have been met,' a claim that 'an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations.' . . .   In other words, 'the fourteenth amendment does not require a local school board to adhere to its own guidelines as long as minimum due process is accorded.'") (quoting *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984)).

In conclusion, "the minimum process she must be provided to satisfy the Due Process Clause is notice and a hearing before she is terminated." *Echtenkamp*, 263 F. Supp. 2d at 1056. Plaintiff does not—and cannot—allege that she has been denied such process, and therefore her procedural due process claim fails.   Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Second Amended Complaint be **GRANTED** as to this claim, and this portion of Count II be **DISMISSED WITH PREJUDICE**.

*3. Substantive Due Process*

Count II also appears to assert a cause of action for violation of Plaintiff's right to substantive due process in her termination.   ECF No. 21 at 16-18, ¶¶ 38-42.   Specifically, Plaintiff avers in her Opposition that "[t]he right to be able to make a living in one's chosen profession is a fundamental constitutional right." ECF No. 28 at 23.   Plaintiff has only asserted a

substantive due process claim if the property interest (her continued employment) is considered fundamental. *See Willis*, 90 F. Supp. 3d at 615. "If the interest is fundamental, then the Fourteenth Amendment shields a plaintiff from 'arbitrary or irrational deprivation, regardless of the adequacy of procedures used.'" *Id.* (quoting *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000)). "If the interest is not fundamental, however, 'the governmental action is entirely outside the ambit of substantive [due] process and will be upheld so long as the state satisfies the requirements of procedural due process." *Id.* (quoting *Nicholas,* 227 F.3d at 142).

To be sure, "[t]he majority of courts of appeals to have addressed this issue have held that continued public employment is not a fundamental property interest entitled to substantive due process protection." *Id.* (citing *Guthrie v. McClaskey*, 2012 WL 5494457, at *6 n.9 (W.D. Va. 2012) (collecting cases)). The Fourth Circuit has previously opined that "[i]t is doubtful that" a public employee's continued employment "is a right properly subject to substantive due process review" because "[t]he public employee's right to his position, 'if it exists, is essentially a state law contract right, not a fundamental interest embodied in the Constitution.'" *Id.* (quoting *Huang*, 902 F.2d at 1142 n.10). Based on this previous statement from the Fourth Circuit, a court within this Division similarly found that "[a plaintiff's] interest in public employment, uninterrupted by disciplinary suspensions, is not a fundamental interest meriting substantive due process protection." *Id.* For the same reasons, the undersigned **FINDS** that Plaintiff's interest in continued public employment is not a fundamental interest and therefore the Amended Complaint does not state a substantive due process claim upon which relief can be granted.

Therefore, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** as to this claim, and this portion of Count II be **DISMISSED WITH PREJUDICE**.

C.  Age Discrimination Claim

In Count III of the Amended Complaint, Plaintiff alleges that Defendant terminated her employment because of her age, pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621 *et seq.*; *see* ECF No. 21 at 18-19, ¶¶ 43-47. The ADEA "makes it unlawful for an employer to take adverse action against an employee 'because of such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 170 (2009) (quoting 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, ***because of*** such individual's age.") (emphasis added)). "A plaintiff may establish a claim of disparate treatment by demonstrating through either direct or circumstantial evidence that age discrimination was an impermissible motivating factor in the employer's adverse employment decision." *Blackburn v. Wise Cty. Sch. Bd.*, No. 2:11CV00033, 2012 WL 1309406, at *2 (W.D. Va. Apr. 17, 2012). Plaintiff alleges both direct and indirect evidence of age-related animus displayed by Pinello and attributable to Defendant.   Specifically, Plaintiff identifies direct evidence in the form of comments made by Pinello to the effect that "younger teachers were needed at Hickory Elementary School and that such young teachers were the future of the school." ECF No. 21 at 12, ¶ 23; *see Marlow*, 749 F. Supp. 2d at 427 ("Direct evidence is evidence that the employer 'announced, or admitted, or otherwise unmistakably indicated that age was a determining factor' in the particular employment action.") (quoting *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982)).

Even if the undersigned were to consider Pinello's comments to be circumstantial or indirect evidence of age-based discrimination, Plaintiff has sufficiently stated a *prima facie* case

33

of age discrimination. "Pursuant to the *McDonnell Douglas* framework, the Plaintiff must establish a *prima facie* case of age discrimination by showing that she: (1) was age 40 or older; (2) was performing her job satisfactorily; (3) suffered an adverse employment action; and (4) was replaced by a comparably qualified younger employee." *Marlow*, 749 F. Supp. 2d at 428. Clearly here, Plaintiff satisfies the first element, and has alleged that she was performing her job satisfactorily prior to Pinello's arrival at Hickory Elementary, thereby satisfying the second element. With respect to the third element, the undersigned has determined *supra* that Plaintiff's placement on a PIP and her ultimate termination could be adverse employment actions, such that the third element is satisfied. With respect to the fourth element, it does appear that this final piece of a *prima facie* case is satisfied because the Amended Complaint alleges that Plaintiff was "replaced" by Arlene Lee, a younger teacher. *See* ECF No. 21 at 13, ¶¶ 26-27. Whether Pinello's comments and/or actions are properly attributable to Defendant is not properly before the undersigned at the Motion to Dismiss stage.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED** with respect to Count III of the Amended Complaint.

## V. RECOMMENDATIONS

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss the Amended Complaint (ECF No. 22) be **GRANTED** with respect to Count II's claims for § 1981/1983 race discrimination and procedural and substantive due process violations, and **DENIED** with respect to Count I's claim for race discrimination under Title VII, and Count III's claim for age discrimination under the ADEA.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen (14) days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Fed. R. Civ. P. 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
October 15, 2018