## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |
|---|---|
| **DANNETTA G. SPELLMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:17cv635** |
| ) | |
| **THE SCHOOL BOARD OF THE CITY** ) | |
| **OF CHESAPEAKE, VIRGINIA,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on The School Board of the City of Chesapeake, Virginia's ("Defendant") Motion for Summary Judgment. ECF No. 40. This matter was referred to the United States Magistrate Judge ("the undersigned") pursuant to a referral order from the United States District Judge. ECF No. 52; *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. The matter has been fully briefed and the undersigned held a hearing on August 15, 2019. As such, this matter is ripe for recommended disposition. For the reasons set forth below, the undersigned **RECCOMENDS** Defendant's Motion for Summary Judgment, ECF No. 40, be **GRANTED** and Plaintiff's Amended Complaint, ECF No. 21, be **DISMISSED WITH PREJUDICE.**

### I. INTRODUCTION

Plaintiff Dannetta G. Spellman ("Plaintiff") was initially hired by Defendant as a public school teacher for the City of Chesapeake, Virginia, in February 1984 and served as an educator

1

for thirty-two years until her termination on or about February 28, 2017. ECF No. 21 at 7, ¶¶ 18-19; *id.* at 13, ¶ 29. On December 11, 2017, Plaintiff instituted the instant action by filing a two-count Complaint in this Court, asserting that Plaintiff's former employer had discriminated against her based on her race and age, ultimately culminating in her termination. ECF No. 1.

## II. PROCEDURAL BACKGROUND

On December 11, 2017, Plaintiff filed a two-count Complaint alleging that her former employers, the City of Chesapeake, Virginia Public Schools, and the School Board of the City of Chesapeake, Virginia, had discriminated against her in her former employment as a public school teacher. ECF No. 1. On January 30, 2018, pursuant to an amended joint stipulation between the parties, the claims against Defendant City of Chesapeake, Virginia Public Schools were dismissed with prejudice, leaving the School Board of the City of Chesapeake, Virginia as the sole defendant in this action. *See* ECF No. 9. On February 27, 2018, Defendant filed its first Motion to Dismiss and Memorandum in Support, seeking dismissal of the first count of Plaintiff's Complaint. ECF Nos. 11-12. On April 5, 2018, the undersigned entered a Report and Recommendation that recommended granting Defendant's Motion to Dismiss but allowing Plaintiff the opportunity to amend her Complaint. ECF No. 19. The recommended disposition was adopted and approved in full by the United States District Judge, and Plaintiff was given until May 21, 2018, to file an amended complaint. ECF No. 20.

On May 21, 2018, Plaintiff timely filed her Amended Complaint, which contained three counts: (1) racial discrimination in violation of Title VII; (2) racial discrimination in violation of 42 U.S.C. ¶¶ 1981, 1983, and due process rights under the Fourth and Fourteenth Amendments of the United States Constitution; and (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). ECF No. 21. On June 4, 2018, Defendant filed a Motion to

Dismiss Plaintiff's Amended Complaint and Memorandum in Support. ECF Nos. 22-23. On October 15, 2018, the undersigned entered a Report and Recommendation that recommended that Defendant's Motion to Dismiss Plaintiff's Amended Complaint be granted in part and denied in part. ECF No. 35. The undersigned recommended that Defendant's motion be granted with respect to Count II's claims for § 1981/1983 race discrimination and procedural and substantive due process violations but denied with respect to Count I's claim for race discrimination under Title VII, and Count III's claim for age discrimination under the ADEA. ECF No. 35 at 34. The recommended disposition was adopted and approved in full by the United States District Judge. ECF No. 36.

On April 23, 2019, Defendant filed a Motion for Summary Judgment and supporting memorandum. ECF Nos. 40-41. Plaintiff then filed an opposition to Defendant's Motion for Summary Judgment. ECF No. 42. Subsequently, Defendant filed an Amended Brief in Support of Motion for Summary Judgment to correct a clerical error, ECF No. 50, and Plaintiff filed an Amended Brief in Opposition to Defendant's Motion for Summary Judgment, ECF No. 45. Finally, Defendant filed a Reply Brief in Support of Motion for Summary Judgment. ECF No. 49. The motions were referred to the undersigned on May 17, 2019. ECF No. 52.

The Court held a hearing regarding this Motion on August 15, 2019. ECF No. 57. At that hearing, the Court noted certain evidentiary gaps in the record relating to the basis of the School Board's decision to terminate Plaintiff's employment. Specifically, the Court noted the lack of specific evidence supporting Defendant's assertion that the School Board relied upon the findings of fact and conclusions of law of the Hearing Officer when making its decision to terminate Plaintiff. Pursuant to Federal Rule of Civil Procedure 56(e)(1), the Court issued an Order that allowed Defendant to properly support the missing facts by submitting additional evidence to

supplement the record. ECF No. 58. The Order also provided Plaintiff an opportunity to respond to Defendant's evidence with evidence of her own. *Id.* Both parties submitted additional evidence in accordance with the Order. ECF Nos. 59-60.

As such, Defendant's Motion for Summary Judgment, ECF No. 40, is now ripe for recommended disposition.

### III. STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial. *See id.* at 324. Conclusory statements, without specific evidentiary support, are insufficient. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Rather, "there must be evidence on which the jury could reasonably find for the [party]." *Anderson*, 477 U.S. at 252. A party opposing summary judgment must present more than "a scintilla of evidence." *Id.* at 251. Importantly, Eastern District of Virginia Local Civil Rule 56(b) provides: "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(b).

4

# IV. UNDISPUTED MATERIAL FACTS

The Court has fashioned its undisputed material facts from those undisputed facts put forth by both Plaintiff and Defendant which were supported by evidence in the record.[1]   While the parties appear to disagree about the characterization of some facts put forth by the opposing party or feel the need to supplement or qualify the opposing party's stated facts, Plaintiff and Defendant do not have any genuine disputes regarding the facts necessary and material to resolution in the instant case.[2]   As such, this Court resolves Defendant's Motion for Summary Judgment, ECF No. 40, pursuant to the following undisputed material facts:

## A. Background

Plaintiff is an African-American female who was hired as a teacher at Hickory Elementary School ("Hickory") in February 1984. ECF No. 50, Def.'s SOF ¶ 1.  Plaintiff taught second grade from 1984 until 2006, when she began teaching fourth grade.  *Id.*, Def.'s SOF ¶ 4.  In July 2009,

---

[1] Facts are primarily crafted from the Statement of Facts ("SOF") proffered in Defendant's Amended Brief in Support of Motion for Summary Judgment, which cited to and were supported by deposition testimony and contemporaneous documentation.   ECF Nos. 41, 50, and attachments thereto.   For the ease of reference, this Report and Recommendation will cite largely to the Statement of Facts ("SOF") rather than to the underlying evidence.  To the extent that Plaintiff contests the facts put forth in Defendant's motion or provides additional facts in Plaintiff's amended brief in opposition, ECF No. 45, those facts are also addressed herein.  As the Court notes *infra*, many of the disputes Plaintiff asserts regarding the facts proffered by Defendant consist solely of Plaintiff's counsel's denials of those facts in his brief in opposition.  Such denials do not constitute a genuine dispute of the material facts asserted. *See Robinson v. Tennis*, 2013 U.S. Dist. LEXIS 197470, at *22 (M.D. Pa. Aug. 29, 2013) ("It is well settled that: '[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials.'") (citing *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 899 (3d Cir. 2007)).  In her brief, Plaintiff also denies that there was a factual basis for the "below expectation" scores on her annual performance evaluations for the years 2013/2014 through 2015/2016 and alleges there were no deficiencies in her performance without providing a citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶¶ 30, 40, 51.  However, "whether an employee has met his employer's legitimate expectations at the time of termination depends on the 'perception of the decision maker[,] . . . not the self-assessment of the plaintiff.'" *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F. 3d 274, 280 (4th Cir. 2000)).  As such, the employer's opinion of the employee's performance, not the employee's own opinion, establishes this element of the *prima facie* case.  Thus, the Court notes that Plaintiff's perception of her own job performance does not create a genuine dispute of material fact.

[2] Defendant and Plaintiff have both proffered many facts in this case, some of which are in dispute.  However, because not all facts are material to the outcome of this case, some such facts are not discussed herein.

Kimberly Pinello, a Caucasian female, became Principal at Hickory. *Id.*, Def.'s SOF ¶ 6.[3]  When Pinello became Principal, Tonita Lassiter, an African-American female, was the Assistant Principal. *Id.*, Def.'s SOF ¶ 7.  Pinello hired Jataune Jones, an African-American female, as Assistant Principal in 2011, and later hired Sharae Brown, an African-American female, as Assistant Principal in 2013.  *Id.*  Pinello had a different administrative style than her predecessor in that she had specific programs she wanted implemented across the school, and therefore teachers, including Plaintiff, had less autonomy in how they ran their classrooms and how they taught. *Id.*, Def.'s SOF ¶ 8.[4]  At no point during her thirty-two years of employment did Plaintiff request to transfer out of Hickory. *Id.*, Def.'s SOF ¶ 59.  At no point during her thirty-two years of employment did Plaintiff request to retire or resign.  *Id.*  After Plaintiff's employment was terminated, Plaintiff was replaced by Arlene Lee, a thirty-one-year-old, African-American teacher who "took over [Plaintiff's] class," and taught Fourth grade at Hickory following Plaintiff's termination.[5]  ECF No. 41, attach. 3 at 6:4-17, 38:4; ECF No. 45, attach. 8 at 18:10-15; ECF No.

---

[3] There are four paragraphs that Plaintiff "neither admitted or denied." ECF No. 45, Pl.'s SOF ¶¶ 6, 7, 41, 64. Pursuant to Local Rule 56, these facts are deemed admitted. E.D. Va. Local R. 56(B) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

[4] Plaintiff denies these facts but offers no evidence or citations to the record to support her denial. ECF No. 45, Pl.'s SOF ¶ 8. Conclusory statements of counsel in a brief, without specific evidentiary support, are insufficient to defeat a motion for summary judgment. *Causey*, 162 F.3d at 802. Furthermore, Plaintiff's citations to the affidavits of Glenn Holk, Patricia Ward, and Theresa Hahn do not directly dispute that Pinello had a different administrative style than her predecessor, that teachers had less autonomy under Pinello, or that Pinello had specific programs she wanted implemented across the school. *See* ECF No. 45, attach. 3 at 6; attach. 4 at 2; attach. 5 at 2, 6. As such, this does not create a genuine dispute of material fact.

[5] The statement of undisputed facts proffered by counsel for both Plaintiff and Defendant includes only the fact that Lee was an African-American teacher at Hickory and that she taught Fourth grade at Hickory after Plaintiff was terminated. ECF No. 50, Def.'s SOF ¶ 64. However, because Plaintiff offers Lee as a comparator for her age discrimination claim, the Court has gleaned from the record the facts relevant to this claim, including that Lee was thirty-one years old and that she "took over [Plaintiff's] class" after Plaintiff was terminated. *See* ECF No. 41, attach. 3 at 6:4-17, 38:4; ECF No. 45, attach. 8 at 18:10-15. Additionally, Plaintiff and Defendant appear to disagree about Lee's beliefs regarding whether Plaintiff was treated differently because of her age and race and whether she and Plaintiff were subject to the same evaluation criteria as their Caucasian colleagues. *See* ECF No. 45, Pl.'s SOF ¶ 62-63. However, the Court notes that Lee's beliefs regarding Plaintiff's treatment are both irrelevant and inadmissible, as such personal opinions are not evidence. *See* Fed. R. Evid. 701; *Felton v. Felton*, No. 98-1256, 1999 U.S. App. LEXIS 12081, at *7 (4th Cir. June 11, 1999) ("Lay opinion testimony is inadmissible absent an adequate factual foundation demonstrating a rational link between the witness' observations and her ultimate testimonial conclusions.")

50, Def.'s SOF ¶ 64.  Pinello awarded Lee her continuing contract at the conclusion of the 2009/2010 school year and each year thereafter.  ECF No. 50, Def.'s SOF ¶ 64.

## B. Plaintiff's Performance During the 2013-2014 School Year[6]

Pinello placed Plaintiff on an Action Plan for the 2013/2014 school year to address the deficiencies in her performance.[7]  Id., Def.'s SOF ¶ 25.  The Action Plan required Plaintiff to use a specified lesson plan template and submit lesson plans by the end of the week, analyze student surveys in the fall, winter, and spring, develop and implement a classroom management plan, receive no further complaints, turn in a weekly newsletter, make two positive contacts a week and keep a communication log of the same, improve punctuality, and submit requested reports and records on time.  Id., Def.'s SOF ¶ 26.  In May 2014, Dr. Sherry Wilson, Assistant Director of Human Resources, an African-American female, recommended that Plaintiff participate in the Chesapeake Public Schools' PIP to assist her in "building a repertoire of effective strategies for

---

(citing *United States v. Leak*, 123 F.3d 787, 795 (4th Cir. 1997).  Furthermore, while Lee's factual knowledge of Plaintiff's differential treatment, including Lee's statement that Plaintiff was required to send surveys to the parents of her students when no other teacher was required to do so, *see* ECF No. 45, attach. 8 at 4:13-25, may be admissible, this factual observation, standing alone, is nonetheless irrelevant to Plaintiff's employment discrimination claim, as it provides no nexus that suggests this additional requirement of Plaintiff was due to either race or age discrimination. As such, the Court need not include these facts in the Statement of Undisputed Material Facts.

[6] While Defendant's counsel offers evidence of Plaintiff's performance prior to 2013 in their brief, the Court has not considered those facts herein, as the ultimate decision to terminate Plaintiff's employment was based solely on her performance during the 2013/2014, 2014/2015, and 2015/2016 school years.  While Pinello and other actors who initially recommended Plaintiff's employment be terminated cited deficiencies in Plaintiff's performance dating back to 2007, Defendant School Board, the ultimate decision-maker regarding Plaintiff's employment, relied only upon evidence of Plaintiff's performance since 2013 in making their determination regarding Plaintiff's termination.  In fact, the School Board unanimously accepted a recommendation to terminate Plaintiff's employment from an Independent Hearing Officer who relied solely on the testimony and documentary evidence in the record pertaining to the 2013/2014, 2014/2015, and 2015/2016 school years.  The Hearing Officer specifically declined to consider any evidence of Plaintiff's performance prior to the 2013/2014 school year.  As such, because evidence of Plaintiff's job performance prior to 2013 was not considered by Defendant School Board, the ultimate decision-maker regarding Plaintiff's termination, this evidence is not relevant to Plaintiff's employment discrimination claim.  *See* Section IV(E), *infra*.

[7] Plaintiff denies that there was a factual basis for the Action Plans Plaintiff was placed on each year because there were no deficiencies in Plaintiff's performance.  ECF No. 45, Pl.'s SOF ¶¶ 25-26, 31-32, 38, 40, 43-46.  However, Plaintiff provides no citation to the record to support her denial.  Plaintiff's own perception of her job performance does not create a genuine dispute of material fact. *See supra* notes 1, 4.

the management of [her] classroom." [8] *Id.*, Def.'s SOF ¶ 27. Plaintiff told Dr. Wilson that she would participate in the PIP. *Id.*

On June 9, 2014, a student was removed from Plaintiff's class "at the request of a parent who felt that her child's emotional well-being was being jeopardized through what she described as 'intentional targeting.'"[9] *Id.*, Def.'s SOF ¶ 29. On her 2013/2014 Evaluation, Plaintiff received a "below expectation" score on the "professional knowledge," "instructional delivery," and "professionalism" performance standards and an unacceptable on the "learning environment" standard. *Id.*, Def.'s SOF ¶ 30. Overall, Plaintiff received a "below expectation" score for the school year. *Id.*

## C. Plaintiff's Performance During the 2014-2015 School Year

Pinello placed Plaintiff on an Action Plan for the 2014/2015 school year to address the deficiencies in her performance. *Id.*, Def.'s SOF ¶ 31. The Action Plan required Plaintiff to have lesson plans immediately available upon request, provide evidence of the implementation of technology in weekly lesson plans, analyze student surveys in the fall, winter and spring, develop and implement procedures for common behavior challenges, implement a morning meeting structure, receive no further validated complaints, and make two positive contacts per week, documenting the same in a communication log. *Id.*, Def.'s SOF ¶ 32. In April 2015, Plaintiff's Action Plan was revised to require the submission of lesson plans by the end of the day each Friday. *Id.*, Def.'s SOF ¶ 38.

---

[8] Plaintiff denies that there was a factual basis for her to participate in the PIP and claims that there were no deficiencies in her performance but provides no citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶¶ 27, 33-36, 42, 50. Plaintiff's own perception of her job performance does not create a genuine dispute of material fact. *See supra* notes 1, 4.

[9] Plaintiff denies that there was a factual basis for the removal of any children from her classroom but provides no citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶ 29. Plaintiff's citation to her own affidavit alleging that "[s]ome Caucasian students and Caucasian parents had a racial bias against [Plaintiff] as an African-American teacher," ECF No. 45, attach. 1 at 3, does not support her denial nor dispute the fact that there were students removed from her classroom. As such, this does not create a genuine dispute of material fact. *See supra* notes 1, 4.

In October 2014, Jacqueline Tate, the Director of Elementary Curriculum and Instruction, a Caucasian female, observed Plaintiff teach and recommended that Plaintiff participate in the PIP. *Id.*, Def.'s SOF ¶ 33. Joanne Sawyer, Director of Human Resources, also referred Plaintiff to the PIP in October 2014. *Id.*, Def.'s SOF ¶ 34. At that time, the PIP was a voluntary program. *Id.*, Def.'s SOF ¶ 35. Lisa Lynch, an African-American female, conducted the observations and provided the feedback and assistance for the PIP. *Id.* Plaintiff did not participate in the PIP during the 2014/2015 school year. *Id.*, Def.'s SOF ¶ 36.

In April 2015, Pinello informed Plaintiff that Leslie Wiggins, Supervisor of Elementary Language Arts, an African-American female, was going to observe Plaintiff's class and make recommendations. *Id.*, Def.'s SOF ¶ 37.[10] Wiggins observed Plaintiff's class on April 28, 2015. *Id.*, Def.'s SOF ¶ 39. Wiggins noted areas of needed improvement including student engagement, decreased instructional time due to Plaintiff being off schedule, not adhering to lesson plans, and the lack of student discourse during the lesson. *Id.* Wiggins discussed with Plaintiff the ways to correct the areas for improvement and offered to help. *Id.* Plaintiff acknowledged the areas for improvement and told Wiggins that she would incorporate her suggestions. *Id.*

On her 2014/2015 Evaluation, Plaintiff received a "below expectation" score on the "professional knowledge," "instructional planning," and "instructional delivery" performance standards. *Id.*, Def.'s SOF ¶ 40. Overall, Plaintiff received a "below expectation" for the school year. *Id.* As a result, Pinello did not recommend Plaintiff for reemployment. *Id.* When a principal does not recommend a teacher for reemployment, the recommendation goes to Human Resources, which makes a recommendation to the Superintendent. *Id.*, Def.'s SOF ¶ 41. In 2015, Human

---

[10] Plaintiff denies that there was a factual basis for this evaluation and recommendation and denies that there were any deficiencies in her performance but provides no citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶¶ 37, 39. Plaintiff's own perception of her job performance does not create a genuine dispute of material fact. *See supra* note 1.

Resources recommended that Plaintiff be reemployed for another year and participate in the PIP. *Id.*, Def.'s SOF ¶ 42.

**D. Plaintiff's Performance During the 2015-2016 School Year**

Pinello placed Plaintiff on an Action Plan for the 2015/2016 school year to address the deficiencies in her performance. *Id.*, Def.'s SOF ¶ 43. The Action Plan required her to read *The Power of Our Words* and complete a Reader's Response for each chapter, have lesson plans immediately available upon request, and provide evidence of the implementation of technology in weekly lesson plans. *Id.*, Def.'s SOF ¶ 44. Pinello met with Plaintiff throughout the school year to address the Action Plan progress. *Id.*, Def.'s SOF ¶ 45. In December 2015, the Action Plan was amended to require Plaintiff to analyze student and parent surveys in the winter and spring, receive no further validated complaints, and make two positive contacts a week, keeping a communication log of the same. *Id.*, Def.'s SOF ¶ 46.

In December 2015, there was an investigation regarding Plaintiff after parents complained to the Assistant Principal regarding Plaintiff's discussion of the book *Teammates*. *Id.*, Def.'s SOF ¶ 47.[11] While students reported that Plaintiff had used the "n" word, Plaintiff denied these allegations, instead stating that she said "nigras." *Id.* Michael Bradley, Human Resources Coordinator, concluded that Plaintiff "demonstrated a lack of judgment by using the term 'nigras' and by telling the class she was going to call the two boys' parents" who complained. *Id.* Also in December of 2015, a lockdown drill was conducted in which teachers were required to move their students out of sight, lock the classroom door, draw the shades, and turn out the lights. *Id.*, Def.'s

---

[11] Plaintiff denies that there was a factual basis for the investigation that took place in December 2015 regarding Plaintiff's discussion of the book *Teammates* but provides no citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶ 47. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* notes 1, 4.

SOF ¶ 48.[12]   When Assistant Principal Brown came into Plaintiff's classroom, she observed Plaintiff's classroom door unlocked, the lights on, the students in plain sight, and Plaintiff looking for her keys.  *Id.*  In April 2016, there was an investigation regarding Plaintiff after students complained that Plaintiff scolded students for being too loud in the cafeteria and yelled at a child with autism.  *Id.*, Def.'s SOF ¶ 49.[13]

Plaintiff participated in the PIP during the 2015/2016 school year.  *Id.*, Def.'s SOF ¶ 50. However, at the conclusion of the school year, Plaintiff had only mastered three of the six goals set by Lynch.  *Id.*  On her 2015/2016 Evaluation, Plaintiff received a "below expectation" on six out of the seven professional standards.  *Id.*, Def.'s SOF ¶ 51.[14]   Overall, Plaintiff received a "below expectation" for the school year.  *Id.*

### E. Plaintiff's Termination

As a result of her performance, Pinello did not recommend Plaintiff for reemployment. *Id.*[15]   Assistant Principal Brown supported Pinello's decision to not recommend Plaintiff for reemployment.  *Id.*, Def.'s SOF ¶ 52.  Upon review of Pinello's recommendation, Human Resources conducted an independent investigation and recommended to the Superintendent, Dr. James Roberts, that Plaintiff not be reemployed.  *Id.*, Def.'s SOF ¶ 53.  A Notice of Intent to

---

[12] Plaintiff "denies as stated" the facts associated with the December 2015 lock-down drill but provides no citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶ 48. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* notes 1, 4.

[13] Plaintiff denies that there was an investigation regarding Plaintiff after students complained that she scolded students for being too loud in the cafeteria and yelled at a child with autism. ECF No. 45, Pl.'s SOF ¶ 49. However, Plaintiff provides no citation to the record to support her denial. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* notes 1, 4.

[14] Plaintiff asserts that there were no deficiencies in her performance but provides no citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶¶ 51-58. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* notes 1, 4.

[15] Plaintiff denies that there was a factual basis for the recommendation that Plaintiff not be re-employed but provides no citation to the record to support her denial. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* notes 1, 4.

Terminate was provided to Plaintiff on May 31, 2016.  *Id.*  Plaintiff requested a hearing on the dismissal recommendation pursuant to the Virginia Code § 22.1-309.  *Id.*, Def.'s SOF ¶ 54.

A hearing was conducted before Arlene Klinedinst, an independent Hearing Officer, on August 16 and 19, 2016.  *Id.*, Def.'s SOF ¶ 55.[16]  At the hearing, Plaintiff was represented by attorney Arnold Abrons, and Defendant was represented by Robert Barry.  *Id.*  On February 8, 2017, Klinedinst issued a written report and recommendation that the School Board uphold Plaintiff's termination and deny her grievance.[17]  *Id.*, Def.'s SOF ¶ 56.  Plaintiff requested an opportunity to present additional evidence to the School Board with respect to her proposed termination.  *Id.*, Def.'s SOF ¶ 57.

On February 27, 2017, the School Board met to discuss the Superintendent's recommendation to terminate Plaintiff.  ECF No. 59, attach 17, ¶ 7.  During that meeting, the School Board had Hearing Officer Klinedinst's written report and recommendation, the two-volume transcript from the hearing, and the 556 pages of exhibits presented at the hearing—all of which had been provided to the School Board prior to the meeting.  *Id.*, ¶¶ 6, 8.  The School Board voted unanimously to decline Plaintiff's request to submit additional evidence.  ECF No. 50, Def.'s SOF ¶ 57.  The School Board also voted unanimously to uphold Hearing Officer Klinedinst's

---

[16] Plaintiff admits that she requested and participated in the hearing concerning the recommendation that she not be re-employed but denied that a factual basis existed for the recommendation that she not be re-employed because there were no deficiencies in her performance to support such a recommendation. ECF No. 45, Pl.'s SOF ¶ 55. However, Plaintiff provides no citation to the record to support her denial. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* notes 1, 4. Plaintiff added, and Defendant did not dispute, that the issues of race and age discrimination were not a part of the grievance hearing and could not be a part of the grievance process because those discrimination claims were to be brought in a filing with the Equal Employment Opportunity Commission. ECF No. 45, Pl.'s SOF ¶ 55

[17] The language Hearing Officer Klinedinst used in the written report and recommendation suggests that Plaintiff had already been terminated at the time the written report and recommendation was issued. *See* ECF No. 41, attach. 49. For example, the written report and recommendation states that Plaintiff *"had* been employed by CPS for 32 years", Plaintiff *"was* employed as a fourth-grade teacher at the time of her termination", "CPS *had* good cause to discharge her", and recommended that "the School Board *uphold* [Plaintiff's] discharge." *Id.* at 1, 7. This confusion, in part, prompted the Court's request for a hearing on the instant Motion, and the subsequent Order, ECF No. 58, which requested additional evidence to supplement the record.

recommendation to terminate Plaintiff, which was based on the findings of fact and conclusions

of law included in the written report and recommendation, and the accompanying transcripts and

exhibits. ECF No. 59, attach. 17, ¶ 10. As such, Plaintiff's employment was terminated.[18] *Id.*

## E. Allegations of Race and Age Discrimination

At the time Plaintiff received the Notice of Intent to Terminate, Plaintiff had not formed a

belief regarding the basis for the alleged harassment she endured from Pinello. ECF No. 50, Def.'s

SOF ¶ 60.[19] Pinello never made any racial comments in Plaintiff's presence. *Id.*, Def.'s SOF ¶

61.[20] Plaintiff has not heard Dr. Roberts or any member of the School Board make any racial

remarks or remarks about the age of employees, nor has she been told that they made any such

remarks. *Id.*, Def.'s SOF ¶¶ 65-66.[21]

## V. DISCUSSION

Plaintiff alleges that she suffered racial discrimination in violation of Title VII of the Civil

Rights Act of 1964 and age discrimination in violation of the ADEA. The statement of undisputed

material facts includes no direct evidence of discrimination against Plaintiff. Plaintiff has

presented no evidence of derogatory statements, writings, or actions by her supervisors or

colleagues which were explicitly based on her race or age. Thus, because Plaintiff has alleged no

direct evidence of discrimination, the Court must follow the three-step, *McDonnell Douglas*

---

[18] Despite the language in Hearing Officer Klinedinst's written report and recommendation, Plaintiff was not, in fact, terminated until the School Board's vote to accept Hearing Officer Klinedinst's recommendation to terminate. ECF No. 59, attach 17; ECF No. 59 attach 19.

[19] Plaintiff denies that at the time she received the Notice of Intent to Terminate, she had not formed a belief regarding the basis for the alleged harassment she endured from Pinello. ECF No. 45, Pl.'s SOF ¶ 60. However, Plaintiff provides no citation to the record to support her denial. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* note 1, 4.

[20] Plaintiff denies that Pinello never made any racial comments in her presence but provides no citation to the record to support her denial. ECF No. 45, Pl.'s SOF ¶ 61. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* note 1, 4.

[21] Plaintiff denies that she never heard Dr. Roberts, or any member of the School Board make any racial remarks or remarks about the age of employees, nor has she been told that they made any such remarks. ECF No. 45, Pl.'s SOF ¶¶ 65-66. However, Plaintiff provides no citation to the record to support her denial. As such, Plaintiff's denial does not create a genuine dispute of material fact. *See supra* note 1, 4.

burden shifting analysis to determine whether a genuine issue of material fact exists as to whether Plaintiff was discriminated against in her termination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973).

In *McDonnell Douglas*, the Supreme Court established a burden-shifting framework for determining whether discrimination has occurred. *See id.* Under this framework, the plaintiff must first establish a *prima facie* case of discrimination to survive summary judgment on a wrongful termination claim. *See id.* "This framework requires, initially, that a plaintiff prove by a preponderance of the evidence a *prima facie* case for intentional discrimination." *Emami v. Bolden*, 241 F. Supp. 3d 673, 679 (E.D. Va. 2017) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

If Plaintiff does establish a *prima facie* case, then "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995). To meet this burden, the defendant "need not persuade the court that it was actually motivated by the proffered reasons...[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254.

If the defendant meets this burden, the plaintiff is given an opportunity to show that defendant's "stated reason . . . was in fact pretext." *McDonnell Douglas Corp.*, 411 U.S. at 804. To determine pretext, the Court must evaluate (i) whether Plaintiff has established that Defendant's explanation was not the true explanation for Plaintiff's termination, *see Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148-49 (2000); (ii) whether Plaintiff has established that there is evidence sufficiently probative of discrimination, *see Ullrich v. CEXEC, Inc.*, 233 F. Supp. 3d 515,

14

528 (E.D. Va. 2017) (quoting *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004)); (iii) whether Defendant has proffered any factors supportive of Defendant's case, *see Reeves*, 530 U.S. at 148-49; and (iv) whether Plaintiff has met her "ultimate burden of proving that she has been the victim of intentional discrimination." *Smith v. Strayer Univ. Corp.*, 79 F. Supp. 3d 591, 599 (E.D. Va. 2015) (quoting *Ennis*, 53 F.3d at 58). Throughout the analysis, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non*.'" *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010) (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)).

## A. Plaintiff's *Prima Facie* Case

### 1. *Plaintiff's Title VII Race Discrimination Claim*

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a). Specifically, an employer may not discriminate against an individual with respect to her "compensation, terms, conditions, or privileges of employment." *Westry v. N.C. A&T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D. N.C. 2003), *aff'd*, 94 F. App'x 184 (4th Cir. 2004) (quoting 42 U.S.C. § 2000e-2(a)).

To establish her *prima facie* case for racial discrimination under Title VII, Plaintiff must demonstrate, "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Court of Appeals of Md.*, 626 F.3d 187, 190 (4th Cir. 2010)). Here, the parties do not dispute that Plaintiff is a member of a protected class, as an African-American. *See* ECF No. 50, Def.'s SOF ¶ 1; *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) ("Cook,

who is black, is a member of the protected class."). Thus, the Court need only determine whether Plaintiff has proffered sufficient evidence to establish the remaining three elements of her *prima facie* case.

### a. Whether Plaintiff had Satisfactory Job Performance

To establish her *prima facie* case, Plaintiff must demonstrate satisfactory job performance. *Goode*, 807 F.3d at 626. Specifically, Plaintiff must demonstrate that she met her employer's legitimate expectations at the time of the adverse employment action. *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015). "[W]hether an employee has met his employer's legitimate expectations at the time of termination depends on the 'perception of the decision maker[,] . . . not the self-assessment of the plaintiff.'" *Id.* at 469 (quoting *Hawkins*, 203 F.3d at 280); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996). The employer's opinion of the employee's performance, rather than the employee's own opinion, establishes this element of the *prima facie* case. *Asip v. Chesterfield Cty. Sch. Bd.*, No. 3:18-cv-261, 2019 WL 495584, at *3 (E.D. Va. Feb. 8, 2019) (citing *Blanch v. Hexagon U.S. Fed., Inc.*, No. 1:17-cv-613, 2018 WL 4997644, at *6 (E.D. Va. Oct. 15, 2018)).

The statement of undisputed material facts reflects that (1) Plaintiff was placed on Action Plans during the 2013/2014, 2014/2015, and 2015/2016 school years to address deficiencies in her performance, ECF No. 50, Def.'s SOF ¶¶ 25, 26, 31, 32, 43-46; (2) Classroom observations of Plaintiff by multiple educators during the 2014/2015 revealed deficiencies in Plaintiff's professionalism and preparation and each observer recommended that Plaintiff participate in the PIP, *id.*, Def.'s SOF ¶¶ 27, 29, 33, 34, 39; (3) Plaintiff participated in the PIP during the 2015/2016 school year, but only mastered three of the six goals set by the end of the year; (4) Plaintiff failed to properly execute a classroom "lock-down" drill in December 2015, *id.*, Def.'s SOF ¶ 50; (5)

Plaintiff received a "below expectation" score on three of the seven total performance standards on her 2013/2014 Evaluation[22] and received an overall performance rating of "below expectation" for the school year,[23] *id.*, Def.'s SOF ¶ 30; and (6) Plaintiff received a "below expectation" score on three out of seven performance standards on her 2014/2015 Evaluation and received an overall "below expectation" score for the year,[24] *id.*, Def.'s SOF ¶ 40.

Based solely on the information regarding Plaintiff's performance as provided by Defendant in their statement of undisputed facts, it appears that Plaintiff failed to meet her employer's legitimate expectations for performance for several years prior to her termination in 2016. While Plaintiff does not directly dispute the facts presented by Defendant as to her job performance, Plaintiff denies that there was a factual basis for the "below expectation" on her annual performance evaluations between 2013 and 2016 and alleges that there were no deficiencies in her performance. ECF No. 45, Pl.'s SOF ¶¶ 30, 40, 51. However, Plaintiff provides no citation to the record to support her denial. *See id.* Nonetheless, the Court notes that the record does include some evidence to suggest that Plaintiff was performing her job satisfactorily between the years of 2013 and 2016, as Plaintiff received a score of "meets expectation" on the majority of the

---

[22] Each Performance Evaluation conducted of Plaintiff between 2013 and her termination in 2016 contained evaluation criteria upon which Plaintiff's performance was evaluated. *See* ECF No. 41 attach. 20, 28. For each criterion, Plaintiff was given a score of either "meets expectation," "below expectation," "unsatisfactory," or "not applicable." *See id.* A score of "meets expectation" meant that "the teacher consistently meets expectations set forth within the stated performance indicator(s)/standard(s)." ECF No. 41, attach. 17. A score of "below expectation" meant that "the teacher inconsistently meets expectations set forth within the stated performance indicator(s)/standard(s)." *Id.* A score of "unsatisfactory" meant that "there is little or no evidence that the teacher has met the expectations set forth within the stated performance indicator(s)/standard(s)." *Id.* Plaintiff failed to point to any evidence or citation to the record to dispute Defendant's assertion that Plaintiff's job performance was below expectation in at least one criterion on her 2013/2014 and 2014/2015 performance evaluations other than the mere assertion by Plaintiff that "there were no deficiencies in [Plaintiff's] performance." *See* ECF No. 45, Pl.'s SOF ¶¶ 30, 40, 51. However, the Court notes that the record reflects that while Plaintiff did receive at least one "below expectation" score on each of these evaluations, Plaintiff also received "meets expectation" scores on the majority of the criteria in each evaluation. *See* ECF No. 41, attachs. 20, 28.

[23] Plaintiff also received a "meets expectation" score on three performance standards and an "unsatisfactory" score on one performance standard of her 2013/2014 Evaluation. *See id.*, attach. 20.

[24] Plaintiff also received a "meets expectation" score on four of the performance standards on her 2014/2015 Evaluation. *See id*, attach. 28.

elements upon which Plaintiff's performance was evaluated each year. *See* ECF No. 41, attach. 20, 28. Furthermore, while Plaintiff received a score of "below expectation" in at least one element of each of her evaluations during these years, Plaintiff only received a score of "unsatisfactory" once, on one element of her 2013/2014 Evaluation. *See id.*, attach. 20. As such, the Court finds there is at least some evidence sufficient to place Plaintiff's performance level in dispute. Therefore, viewing the evidence in the light most favorable to the nonmoving party, there is enough evidence to establish this prong of Plaintiff's *prima facie* case.

   *b. Whether Defendant Engaged in an Adverse Employment Action*

   "To be cognizable under Title VII's prohibition on workplace discrimination, the employer must engage in an 'adverse employment action.'" *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016) (citing *Goode*, 807 F.3d at 625). To be sure, "Title VII protects against adverse employment actions, [but] not all workplace injustices." *Id.* at 819; *see also Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003) ("Although something less than an 'ultimate employment decision' may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy.") (citing *Settle v. Balt. Cty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999), *aff'd mem.*, 203 F.3d 822 (4th Cir. 2000)). As the Supreme Court observed in *Burlington*, the words included in 42 U.S.C. § 2000e-2(a)(1) are important; "Title VII's core anti-discrimination provision," (including "hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee") "explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 62 (2006). Thus, "[a]n adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or

benefits of the plaintiff's employment.'" *Holland v. Wash. Homes*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)).

Defendant provided Plaintiff with a Notice of Intent to Terminate on May 31, 2016, and following a hearing, Plaintiff's employment was terminated. ECF No. 50, Def.'s SOF ¶¶ 53, 58. As such, Defendant's termination of Plaintiff is sufficient to prove that Defendant engaged in adverse employment action. *See Booth v. Leggett*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) ("Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'") (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). Additionally, because Plaintiff's placement on the PIP and apparent failure to comport with the PIP requirements were ultimately used as a justification for her termination, Plaintiff's placement on the PIP could also be considered an adverse employment action. *See Wooten v. Gruenberg*, No. 1:15-CV-724, 2016 WL 1364043, at *5 (E.D. Va. Apr. 4, 2016), *aff'd*, 678 F. App'x 168 (4th Cir. 2017) ("Similarly, 'where an employee's failure to meet the performance objectives of probation establishes grounds for dismissal, placing an employee on probation may also be an adverse employment action.'") (quoting *Spriggs v. Senior Servs. of Se. Va.*, 2012 WL 1940761, at *7 (E.D. Va. May 29, 2012) *aff'd sub nom.*, 489 F. App'x 711 (4th Cir. 2012)); *see also Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 430 (E.D. Va. 2010) ("A modification in job duties and responsibilities, even duties that are encompassed within a former job description, may nevertheless constitute an adverse employment action."). As both Plaintiff's ultimate termination and her prior placement on the PIP are sufficient to prove that Defendant engaged in adverse employment action, Plaintiff has established this prong of her *prima facie* case.

19

*c. Whether Plaintiff was Treated Differently from Similarly Situated Employees Outside the Protected Class*

Finally, in order to prove her *prima facie* case for race discrimination under Title VII, Plaintiff must prove that she was treated differently from similarly situated employees outside her protected class. Plaintiff need not point to a similarly situated comparator, as a matter of law, to succeed on a claim based upon discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). However, when a plaintiff's claims of Title VII race discrimination, as here, are based "completely upon a comparison to an employee from a nonprotected class . . . the validity of [the plaintiff's] *prima facie* case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Burdine*, 450 U.S. at 258). A plaintiff must demonstrate that she is similarly situated to her comparators in *all* relevant respects, including that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1982)); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable complaints about discrimination."). Comparators need not be identical; rather, they must just be similar in all *relevant* aspects, "such as conduct, performance, and qualifications." *Rayyan v. Va. Dep't of Transp.*, No. 1:15-cv-01681, 2017 WL 123442, at *3 (E.D. Va. Jan. 12, 2017) (citing *Haywood*, 387 F. App'x at 359). "And, of course, the comparator must have been treated more favorably

than the Plaintiff with respect to the adverse action complained of." *Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 457-58 (E.D. Va. 2018) (quoting *Haywood*, 387 F. App'x at 359).

Plaintiff alleges that she was treated differently from three of her Caucasian co-workers: Glen Holk, Theresa Hahn, and Patricia Ward. ECF No. 21 at 8. However, the evidence in the record does not support the assertion that these three co-workers were similarly situated to Plaintiff. First, Plaintiff alleges that she was treated differently than Ward. *Id.* However, Ward never received negative performance evaluations, was never placed on a PIP, and retired from Hickory in 2013, three years before Plaintiff was terminated. *See* ECF No. 41, attach. 11 at 2; *id*, attach. 52 at 12:7-9, 21:14-17, 66:1-10. Therefore, because Ward's performance consistently met expectations, Ward was never placed on a PIP, and Ward was not terminated from her teaching position, *see id.*, attach. 11 at 2; *id.*, attach. 52 at 12:7-9, 21:14-17, 66:1-10, Ward cannot be considered similarly situated to Plaintiff, as Plaintiff received multiple "below expectation" scores on multiple performance evaluations, was placed on a PIP on several occasions, and never requested to retire or resign, *see* ECF No. 50, Def.'s SOF ¶¶ 25-51, 59.

Next, Plaintiff alleges that she was treated differently than Holk. ECF No. 21 at 8. However, Holk also cannot be considered similarly situated to Plaintiff, as Holk only received "below expectation" scores on one performance evaluation and later requested a transfer from Hickory, *see* ECF No. 41, attach. 11 at 2, while Plaintiff received multiple "below expectation" scores on multiple performance evaluations, never sought a transfer from Hickory, but was instead terminated from her employment, ECF No. 50, Def.'s SOF ¶¶ 25-51, 59.

Finally, Plaintiff alleges that she was treated differently than Hahn. ECF No. 21 at 8. However, while Plaintiff received multiple "below expectation" scores on her 2013/2014 and 2014/2015 performance evaluations, Hahn only ever received two "below expectation" scores on

21

her performance evaluations. ECF No. 50, attach. 11 at 2. Additionally, while Plaintiff and Hahn both participated in a PIP, Hahn *voluntarily* participated in a PIP, while Plaintiff was placed on a PIP due to her below expectation performance scores. *Id.* Further, Hahn retired from Hickory in 2013, *see* ECF No. 41, attach. 11 at 2, while Plaintiff's employment was terminated, and Plaintiff never requested to retire or resign, *see* ECF No. 50, Def.'s SOF ¶ 59. Furthermore, Plaintiff has failed to allege any facts which indicate that the reasons for Hahn's "below expectation" scores were of "comparable seriousness" to the conduct for which Plaintiff received "below expectation" scores. *Mitchell*, 964 F.2d at 583.

It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position. *Anderson*, 477 U.S. at 257. Therefore, based on the evidence included in the record, Plaintiff has failed to establish that Holk, Hahn, or Ward were similarly situated to Plaintiff. As such, Plaintiff is unable to establish this element of her *prima facie* case. However, even if, viewing the evidence in the light most favorable to Plaintiff, Plaintiff could establish a *prima facie* case for race discrimination, Defendant had a legitimate, nondiscriminatory reason for termination as discussed *infra*.

*2. Plaintiff's Age Discrimination Claim*

The Age Discrimination in Employment Act of 1967 ("ADEA") "makes it unlawful for an employer to take adverse action against an employee 'because of such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quoting 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age.") (emphasis added)). "Pursuant to

22

the *McDonnell Douglas* framework, the Plaintiff must establish a *prima facie* case of age discrimination by showing that she: (1) was age 40 or older; (2) was performing her job satisfactorily; (3) suffered an adverse employment action; and (4) was replaced by a comparably qualified younger employee." *Marlow*, 749 F. Supp. 2d at 428.

While neither party explicitly included Plaintiff's age in their statements of undisputed facts, the Court finds by inference of Plaintiff's employment at Hickory since 1984 that Plaintiff was over the age of forty. ECF No. 50, Def.'s SOF ¶ 1. As such, element (1) of Plaintiff's *prima facie* case is satisfied. As discussed *supra* in section V(A)(1)(a)-(b), elements (2) and (3) of Plaintiff's *prima facie* case for age and race discrimination are satisfied as Plaintiff has established that she suffered an adverse employment action by means of her placement on the PIP and her ultimate termination and there is at least some evidence that Plaintiff was performing her job satisfactorily prior to her termination. Therefore, the only remaining element of Plaintiff's *prima facie* case for age discrimination the Court need consider is whether Plaintiff was replaced by a comparably qualified younger employee.

The statement of undisputed facts put forth by Defendant establishes that Pinello awarded Arlene Lee, a teacher employed at Hickory, her continuing contract at the conclusion of the 2009/2010 school year and each year thereafter and that Lee taught Fourth grade at Hickory after Plaintiff was terminated. ECF No. 50, Def.'s SOF ¶ 64. Furthermore, the record includes an indication that Lee, "took over [Plaintiff's] class." ECF No. 41, attach. 3 at 6:4-17, 38:4. The record further reflects that at "the time [Lee] replaced [Plaintiff] in her classroom," she was thirty-one years old, making her a comparably younger employee as compared to Plaintiff. *See* ECF No. 45, attach. 8 at 18:10-15. As such, based on both the parties' statements of undisputed material facts and the evidence included in the record, the Court **FINDS** that this element of Plaintiff's

23

*prima facie* case for age discrimination is met, as Plaintiff was replaced by Arlene Lee, a comparably younger employee. Thus, the Court finds there is sufficient evidence to support Plaintiff's *prima facie* case for age discrimination pursuant to the ADEA.

## B. Defendant's Legitimate, Nondiscriminatory Reason for Terminating Plaintiff's Employment

Assuming that Plaintiff successfully established her *prima facie* case for both race and age discrimination, the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for Plaintiff's termination. *See Ennis*, 53 F.3d at 58. To meet this burden,

> The defendant need not persuade the court that it was actually motivated by the proffered reasons. *See [Bd. of Trs. of Keene State Coll. v.] Sweeney*, [439 U.S. 24, 25 (1978).] . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth . . . the reasons for the plaintiff's [termination] . . . with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

*Burdine*, 450 U.S. at 254-56. Defendant's explanation "must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. However, "the defendant bears the burden of production, not persuasion, and the burden can involve no credibility assessment." *Pettus v. Am. Safety Razor Co.*, No. CIV. A. 599CV000103, 2001 WL 418723, at *5 (W.D. Va. Mar. 29, 2001) (citing *Reeves*, 530 U.S. at 142). "Job performance and relative employee qualifications are widely recognized as valid, nondiscriminatory bases for any adverse employment action." *Evans*, 80 F.3d at 960.

Hearing Officer Klinedinst, upon whose detailed, written Report and Recommendation the School Board relied in making their decision to terminate Plaintiff's employment, set forth those specific performance issues which constituted the legitimate, non-discriminatory reasons for Plaintiff's recommended termination. *See* ECF No. 41, attach. 49 at 6-7. These reasons included that: (1) Plaintiff had the opportunity to participate in the PIP during the 2014/2015 school year,

but chose not to participate until the 2015/2016 school year;[25] (2) Classroom observations of Plaintiff by multiple educators revealed deficiencies in Plaintiff's professionalism and preparation; (3) Plaintiff failed to properly execute a classroom "lock-down" drill in December 2015; and (4) Plaintiff "displayed a pattern of unsatisfactory or 'below expectations' work performance in the classroom for three years prior to her termination of employment. *Id.* Hearing Officer Klinedinst further explained that, "[Plaintiff's] unsatisfactory work performance, over a period of three school years, even without considering the reprimand related to the December 2, 2015, incident, creates just cause for termination." ECF No. 41, attach. 49 at 7. However, Klindedinst added, especially when considering Plaintiff's other prior discipline in addition to her documented, poor work performance in the 2013-2014, 2014-2015, and 2015-2016 school years, "there is no question" that Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *Id.*

"A plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989). Therefore, "[D]efendant [has] carrie[d] this burden of production, [and] the presumption raised by the *prima facie* case is rebutted[.]" *Burdine*, 450 U.S. at 255. Because Defendant has proffered at least one legitimate reason for Plaintiff's termination, the Court **FINDS** that Defendant has met its burden of production.

---

[25] Hearing Officer Klinedinst's findings of fact state that Plaintiff was offered the chance to participate the PIP at the start of the 2014/2015 school year and Plaintiff declined to participate, but Plaintiff subsequently participated in the PIP during the 2015/2016 school year. ECF No. 41, attach. 49 at 3. However, when Hearing Officer Klinedinst discusses Plaintiff's documented performance deficiencies between 2013 and 2016, she misstates the aforementioned facts by stating that "[Plaintiff] had the opportunity to begin the Performance Improvement Plan process at the beginning of the 2015-2016 school year, but she chose not to participate." *Id.*, attach. 49 at 6. The Court notes that the record supports the fact that Plaintiff participated in the PIP during the 2015/2016 school year. *See id.*, attach. 1 at 120:20-21.

**C. Plaintiff Failed to Establish that Defendant's Legitimate, Nondiscriminatory Reason for Terminating Plaintiff Was Pretextual**

After a defendant meets its burden of producing a legitimate, nondiscriminatory reason for termination, the plaintiff has an opportunity to show that the defendant's "stated reason . . . was in fact pretext." *McDonnell Douglas Corp.*, 411 U.S. at 804. "[T]he *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s]" at this stage of the analysis. *Reeves*, 530 U.S. at 142-43 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)). A plaintiff can demonstrate pretext "directly by persuading the court that a discriminatory reason more likely motivated the [Defendant,] or indirectly by showing that the [Defendant's] proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. In *Reeves*, the Supreme Court clarified the standard:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive . . . [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated . . . [However,] there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

530 U.S. at 147-48.

To determine pretext, the Court must evaluate (i) whether Plaintiff has established that Defendant's explanation was not the true explanation for Plaintiff's termination, *see id.* at 148-49; *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998); (ii) whether Plaintiff has established that there is evidence sufficiently probative of discrimination, *see Ullrich*, 233 F. Supp. 3d at 528 (quoting *Mereish*, 359 F.3d at 335); (iii) whether Defendant has proffered any factors supportive of Defendant's case, *see Reeves*, 530 U.S. at 148-49; and (iv) whether Plaintiff has met

her "ultimate burden of proving that she has been the victim of intentional discrimination," *see Smith*, 79 F. Supp. 3d at 599 (quoting *Ennis*, 53 F.3d at 58). The Fourth Circuit has held that, in order to establish that an employer's "proffered reason for the challenged action is pretext for discrimination, the plaintiff must prove 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 377-78 (4th Cir. 1983) (quoting *Hicks*, 509 U.S. at 515).

*1. Plaintiff has Failed to Prove that Defendant's Legitimate, Nondiscriminatory Reason for Termination was Pretextual.*

The only evidence Plaintiff offers to rebut Defendant's articulated nondiscriminatory reason for her termination is (1) Plaintiff's affidavit in which she denies that there was any justification for Pinello's placement of Plaintiff on the PIPs and Action Plans, ECF No. 45, attach. 1 at 4 ("Pinello constantly placed me on Performance Improvement Plans ("PIP") and Action Plans without justification . . ."); and (2) hearsay affidavits from Plaintiff's co-workers, *see* ECF No. 45 at 27. First, with respect to Plaintiff's contention that there was no justification for Pinello's placement of Plaintiff on the PIPs and Action Plans, courts have repeatedly held that "it is the perception of the decision-maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette*, 133 F.3d at 299 (quoting *Evans*, 80 F.3d at 960-61). As such, the Plaintiff's own "perception of herself . . . is not relevant." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). Even if Plaintiff's perception of herself was relevant, it fails to establish a reasonable probability that Plaintiff's performance evaluations were false or pretextual, which is necessary to support an inference of discrimination. *See McKoy v. Charlotte-Mecklenburg Schs,* No. 3:10cv494, 2011 U.S. Dist. LEXIS 52379, at *15 (W.D.N.C. May 16, 2011) (citing *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241-42 (4th Cir. 1982). There is nothing in the record to suggest as a reasonable

27

probability that Plaintiff's age or race affected her evaluations in any manner. As such, Plaintiff's proffered opinion testimony is irrelevant.

Secondly, with respect to the affidavits of Glen Holk, Patricia Ward, and Theresa Hahn, these affidavits are improper under Rule 56 of the Federal Rules of Civil Procedure, as they were not made with personal knowledge and did not set forth "facts" that would be admissible into evidence.[26] Even if the Court were to consider these affidavits, the statements contained therein are no more than conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law. *See Mitchell*, 964 F.2d at 584-85. While the affidavits state in a conclusory manner that Plaintiff was treated differently than Caucasian teachers or that she was discriminated against on the basis of her race or age, there is no direct factual evidence that either race or age played a role in Defendant's decision to terminate Plaintiff's employment. *See* ECF No. 45, attach. 3, 4, 5.

*2. There is No "Cat's Paw" Theory of Liability*

Next, Plaintiff's theory of the case appears to be that Defendant's decision to terminate Plaintiff was merely a rubberstamp for Pinello's earlier recommendation not to reemploy her, and that Pinello was the one who held discriminatory age and race-based beliefs and made discriminatory comments regarding the same.[27] ECF No. 57. Even if Plaintiff was able to establish that Pinello instigated Plaintiff's termination from employment due to animus, Plaintiff is still unable to hold the School Board "liable for the animus of a supervisor who was not charged with

---

[26] Rule 56 of the Federal Rules of Civil Procedure provides that "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[U]nder this rule, statements in affidavits as to opinion or belief are of no effect." *Saunders v. Summer*, 366 F. Supp. 217, 219 (W.D. Va. 1973) (citing Barron & Holtzoff, *Federal Practice and Procedure* (Wright ed. 1958)).

[27] If unclear before, Plaintiff made clear at the August 15, 2019, hearing on Defendant's Motion that Plaintiff believed Pinello to be the bad actor and that her recommendation to terminate Plaintiff improperly influenced the review of others, ultimately resulting in Plaintiff's termination by the School Board.

making the ultimate employment decision," as there is no "cat's paw" theory of liability in which Defendant is vicariously liable for Pinello's actions. *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011). "Under well-established Fourth Circuit precedent, discriminatory statements or conduct by lower-level employees cannot support a claim for unlawful discrimination if they were not made, adopted, or approved by the relevant decision-maker bearing final authority for employment decisions." *Zanganah v. Council of Co-Owners of Fountains Condo., Inc.*, No. 1:10-cv-219, 2010 WL 5113637, at *15 (E.D. Va. Dec. 8, 2010) (citing *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 291 (4th Cir. 2004)); *see also Smith v. Estes Express*, No. 3:08-cv-574, 2009 WL 1009956, at *5 (E.D. Va. April 14, 2009) (finding no nexus between racially insensitive remarks and adverse employment action where the remarks were not made by the ultimate decision maker). "The Fourth Circuit recognizes that a 'cat's paw' theory of employment discrimination only in extremely limited circumstances where the formal decision-maker operates as such a 'rubber stamp' as to have effectively abdicated decision-making authority to some lower-level subordinate." *Zanganah*, 2010 WL 5113637, at *5 (citing *Hill*, 354 F.3d at 290-91).

As such, the School Board can only be liable to Plaintiff for Pinello's alleged discriminatory conduct "if the School Board relied entirely on [Pinello's] biased recommendation or investigation of the facts, then [Pinello] would be the de facto decision-maker, imposing liability on the School Board under agency principles." *Tucker v. Sch. Bd. of City of Va. Beach*, No. 2:13-cv-530, 2015 WL 10690556, at *6 (E.D. Va. Sept. 30, 2015) (citing *Minevich v. Spectrum Health-Meier Heart Ctr.*, 1 F. Supp. 3d 790, 805-06 (W.D. Mich. 2014) and *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 485 (10th Cir. 2006)). However, as discussed *supra*, Plaintiff's performance was evaluated by five individuals in addition to Pinello over the course of her employment. *See* ECF No. 50, Def.'s SOF ¶¶ 24, 33, 34, 35, 39. Furthermore, Human Resources

reviewed Pinello's recommendation that Plaintiff not be reemployed and recommended to the Superintendent, Dr. Roberts, that Plaintiff's employment be terminated. *Id.*, Def.'s SOF ¶ 53. Plaintiff then participated in a hearing before an independent Hearing Officer after which the Hearing Officer recommended that the School Board uphold Plaintiff's proposed termination. *Id.*, Def.'s SOF ¶¶ 55-56. Finally, the School Board voted unanimously to uphold the Hearing Officer's recommendation. *Id.*, Def.'s SOF ¶ 58. As such, the Court **FINDS** that no reasonable jury could find that Defendant relied entirely on a recommendation biased by racial or age discrimination. Consequently, Defendant's legitimate non-discriminatory reason for terminating Plaintiff was not a pretext for unlawful race or age discrimination.

## VI. RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. 40, be **GRANTED** and that Plaintiff's Amended Complaint, ECF No. 21, is **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen (14) days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to Plaintiff and forward a copy of the same to counsel for the Commissioner.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 15, 2019